Eugene Frank TAMME, Appellant,

v.

**COMMONWEALTH of
Kentucky, Appellee.**

Nos. 85–SC–829–MR, 86–SC–949–TRG.

Supreme Court of Kentucky.

Sept. 8, 1988.

As Corrected Sept. 8, 1988.

Rehearing Denied Nov. 17, 1988.

Marie Allison, R. Neal Walker, Asst. Public Advocate, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Paul W. Richwalsky, Jr., Elizabeth Myerscough, Asst. Atty. Gen., Frankfort, for appellee.

STEPHENS, Chief Justice.

On June 14, 1985, appellant was convicted in Washington Circuit Court of two counts of capital murder. The trial court followed the recommendation of the jury and sentenced appellant to death.

The convictions stemmed from the murders of Neil Maddox and Harold Sutherland. They disappeared on August 11, 1983. Nothing was known about their fate until William Buchanon, a partner in the marijuana farming business with appellant, came forward and told the police that he had witnessed both the murders and the disposal of the bodies. He alleged that appellant knew the victims because he had frequently hired them to work on his farm, and had murdered them in the marijuana field. Buchanon and appellant were both indicted for the murders of Maddox and Sutherland, but were separated for trial on appellant's motion. Buchanon pled guilty to the lesser offense of complicity to commit murder, and his minimum sentence was probated by the court. Appellant did not plead guilty, but was tried and convicted with the help of Buchanon's damaging testimony. Appellant raises 29 points of error in his appeal as a matter of right. We need not consider the merits of all of them, because we reverse and remand the trial court for a new trial.

■ Appellant first alleges that he was denied reliable capital sentencing, because the prosecutor conducting the death-qualification portion of the voir dire repeatedly minimized the jury's responsibility for sentencing the defendant. At appellant's trial, the voir dire was separated into two parts —death penalty issues and issues pertaining to the particular trial. Of the 60 jurors questioned in the individual voir dire for Tamme's trial, 29 were death-qualified. It took two days to question the 60, as each was privately examined as to his or her preconceptions about the case. Of the 14 jurors finally empaneled for the case, half were told by the special prosecutor that they would not be signing the death warrant, or that the responsibility for carrying out the sentence would be handled on "down the line." The remaining seven were told that they would make a recommendation to the judge who would impose a sentence. Considering the extreme importance of a fair sentencing in a capital case, any actions by the Commonwealth which would tend to lessen in the minds of the jury their awesome responsibility should be given the highest scrutiny.

The following cases plot the development of this Court's position on the use of the word "recommend" in death penalty cases. In *Ice v. Commonwealth*, Ky., 667 S.W.2d 671, 676 (1984), we held that "emphasis on the jury's sentence as only a recommendation is improper." The United States Supreme Court addressed the larger issue of denigrating the jury's responsibility in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The Court held in that case that "It is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* 105 S.Ct. at 2639. Later that same year, the Kentucky Supreme Court decided *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985). In *Ward,* the Commonwealth repeatedly emphasized to the jury during the penalty phase of the trial that their recommendation to the court of a sentence was just that, a recommendation. The prosecutor repeatedly minimized the responsibility of the jurors in weighing the evidence and determining a penalty to be imposed.

This Court held that,

The prosecutor clearly sought to divert from the minds of the jurors their true responsibility in this case by implying that the ultimate responsibility would fall to the trial judge, this court, other appellate courts, or to the Governor. This is clearly an error of reversible magnitude. *It is the responsibility of each juror to decide whether the defendant will be executed, and they shall not be in-*

formed, either directly or by implication, that this responsibility can be passed along to someone else. The mere fact that the statute provides for jury recommendation cannot be utilized as a license to induce the jury to disregard its responsibility. (Emphasis added.)

*Id.* at 408.

The next case this Court decided was *Kordenbrock v. Commonwealth,* Ky., 700 S.W.2d 384 (1985). Upon examination of the record in *Kordenbrock,* however, the court came to the conclusion that, although the word "recommend" was used, it was "not to such an extent as to denigrate the responsibility of the jury in imposing a death penalty." *Id.* at 389. Most recently, we decided *Sanborn v. Commonwealth,* Ky., 754 S.W.2d 534 (1988), and *Grooms v. Commonwealth,* Ky., 756 S.W.2d 131 (1988). In *Sanborn,* we noted that "use of the word 'recommend' is not *per se* reversible error." At 546 (citing *Matthews v. Commonwealth,* Ky., 709 S.W.2d 414, 421 (1986)). But in *Grooms* we held, "the instructions on the penalty phase should require the jury to *fix* the punishment." At 141 (emphasis added).

■ The facts of this case compel us to take the next step. Despite this Court's efforts to map out the territory of permissible use of the word "recommend," prosecutors continue to nudge at the boundary of abuse. In the case before us, there was clearly an attempt by the prosecution to place the jurors' minds at ease by emphasizing that the trial court may accept or reject the recommendation of the jury, thus transferring the responsibility of a man's life to another, and enabling the jury to "wash their hands" of the matter. For at least seven of the juror candidates, this attempt was manifest. Telling them that someone else would sign the death warrant on down the line obviated the burden rather effectively. The remaining jurors were told that they would recommend a sentence which the judge would then impose. The inference here, although a fairly accurate reproduction of the statute, is that the jury's recommendation holds little or no weight and may be rejected by the trial court.

The Commonwealth maintains there was no attempt to diminish in the eyes of the jury the awesome responsibility they should feel when determining whether someone should live or die. The Commonwealth claims the questions did no more than track the language of the death-penalty-sentencing statute, KRS 532.025. We disagree. Although the statute does indeed specify that the jury shall "recommend" a sentence to the trial court, the prosecutor did more than simply make the jury aware of this. Over half of the jury panel which actually sat on the case were reassured that they were merely one step in a long process, and there was no need for concern as they would not "sign the death warrant."

■ Therefore, since we held in *Ward* that the jury should not be informed, even by implication, that the responsibility could be passed on to someone else, all the death penalty voir dire is tainted, and we accordingly reverse the trial court on this issue. On retrial, the prosecutor should refer to the jury's function as "fixing" sentence. Furthermore, we hold that in capital cases in which trial commences after the effective date of the finality of this opinion, the word "recommend" may not be used with reference to a jury's sentencing responsibilities in voir dire, instructions or closing argument. *Grooms v. Commonwealth,* Ky., 756 S.W.2d 131, 141 (1988).

■ Appellant also argues that the repeated references to other unconvicted bad acts violated his right to a fair trial. Appellant claims that the prosecutor erroneously dwelt upon his marijuana farming operation and the allegation that he was a heavy user and supplier of cocaine. The prosecutor also presented evidence of appellant's alleged insurance fraud to the jury. The Commonwealth maintains that such evidence is relevant and necessary to explain the motive and circumstances surrounding the murders. We disagree. Although appellant has a right only to a fair trial, not a perfect one, he is entitled to be tried for the crimes charged in the indict-

ment and no others. *Holland v. Commonwealth,* Ky., 703 S.W.2d 876, 879 (1985). Evidence that appellant is a drug user and cultivator is highly prejudicial, and only marginally probative in determining who killed Maddox and Sutherland. The evidence of motive, what little there was, tended to prove some sort of jealous-lover scenario, not a drug deal gone sour. The farming of marijuana had virtually nothing to do with the crime other than to produce the scene. On retrial, the jury only needs to be told that the victims were occasional employees of appellant, shot in a field where they worked.

■ Appellant further contends that it was reversible error for the prosecution to have lost one of the bullets found at the scene. He argues that the loss is inexcusable and renders the fact-finding of the prosecution skewed and perverted. The Commonwealth argues there was no error. We agree. In order to establish a due process violation, the evidence must either be intentionally destroyed, or destroyed inadvertently outside normal practices. Furthermore, the lost evidence must "possess an exculpatory value that was apparent before it was destroyed." *California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984). Appellant has failed to satisfy this test. He has not proved that the loss was anything but an unforeseen accident which occurred in the normal course of the police department's business, and there is no indication that the lost bullet would tend to clear him. We therefore hold any error to be harmless.

■ Appellant next asserts that the prosecutor was permitted to make improper statements to his extreme prejudice. Appellant claims the prosecutor made derogatory comments to the jury about defense counsel and defendant's guilt. He also told the jury in the penalty phase that they had no choice but to sentence him to death. The prosecutor also commented on appellant's failure to present any witnesses or defense to the charges against him. There were comments made to the jury about the credibility of various witnesses, and frequent references to appellant's mar-

ijuana farming and cocaine use. Since we have already held that the evidence of unconvicted prior acts of the appellant was wrongly admitted, apart from those references, the prosecutor's statements were justified. The prosecutor may give his opinion as to the defendant's guilt so long as it is based upon the evidence of the case. *Marlowe v. Commonwealth,* Ky., 709 S.W.2d 424, 432 (1986). Furthermore, a prosecutor must impress upon the jurors the gravity of their task. *Lynem v. Commonwealth,* Ky., 565 S.W.2d 141, 145 (1978). To that end, strong words may be used. It is important to recognize that, although a defendant has a constitutional right to a fair trial, the Commonwealth has a right to see that justice is done. Thus, the appellant's outrageous murders warranted the fiery plea on the part of the prosecutor. We would prefer, however, that there had been less smoke and more fire. It cannot work to the disadvantage of a Commonwealth's Attorney to let the jury reach its own opinions about guilt or innocence, and the penalty, if any, to be imposed. On retrial, it would be wise for the prosecutor to keep this in mind.

■ Finally, appellant argues the trial court should not have examined non-statutory aggravating factors when sentencing him to death. The judge listed on the trial court's report that the murders were "heinous" and they were prompted by "greed and lust." The death penalty sentencing statute provides seven statutory aggravators:

1. The offense of murder or kidnapping was committed by a person with a prior record of conviction for a capital offense, or the offense of murder was committed by a person who has a substantial history of serious assaultive criminal convictions;

2. The offense of murder or kidnapping was committed while the offender was engaged in the commission of arson in the first degree, robbery in the first degree, burglary in the first degree, rape in the first degree, or sodomy in the first degree;

3. The offender by his act of murder, armed robbery, or kidnapping knowingly created a great risk of death to more than one (1) person in a public place by means of a destructive device, weapon, or other device which would normally be hazardous to the lives of more than one (1) person;

4. The offender committed the offense of murder for himself or another, for the purpose of receiving money or any other thing of monetary value, or for other profit;

5. The offense of murder was committed by a person who was a prisoner and the victim was a prison employe engaged at the time of the act in the performance of his duties;

6. The offender's act or acts of killing were intentional and resulted in multiple deaths; and

7. The offender's act of killing was intentional and the victim was a state or local public official or police officer, sheriff, or deputy sheriff engaged at the time of the act in the lawful performance of his duties.

KRS 532.025(2)(a). Nevertheless, we have held that a trial court is not bound by these limits in reviewing the verdict at the time of sentencing. A jury, as trier of fact, by its verdict, must find specified aggravating circumstances in order to pass constitutional muster. A trial judge, on the other hand, plays a different role. He or she, in the exercise of discretion in determining whether to follow the recommendation of the jury, may examine all the circumstances of the case. These may go beyond the statutory aggravators to include such considerations as the appellant's remorse, the heinousness of the crime, and the motivation for the murder. *See Matthews v. Commonwealth*, Ky., 709 S.W.2d 414, 423 (1986). Thus, it was not error for the trial court to consider the non-statutory aggravators when sentencing appellant to death.

We therefore reverse the decision of the Washington Circuit Court, and remand for new trial consistent with this opinion.

GANT, LAMBERT, LEIBSON, STEPHENSON and VANCE, JJ., concur.

WINTERSHEIMER, J., dissents in a separate opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent because I believe the jury which sentenced Tamme was fully aware of its responsibilities regarding the death sentence, and the references at trial to other offenses were relevant and the defendant received a fundamentally fair trial.

The questions propounded during the individual jury selection did not tend to reduce the responsibility of the jury for imposing the death penalty. My examination of the record indicates that the remarks of the prosecutor were not continuous or pervasive or an intentional attempt to minimize the responsibility of the jury. A careful review of the entire proceedings does not support the position that the comments of the prosecutor infected the trial with unfairness which resulted in a denial of due process as denounced in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed. 2d 231 (1985). When considered in context, the challenged comments of the prosecutor are insignificant and present no basis for reversal. Here, the isolated remarks in question are similar to those in *Skaggs v. Commonwealth*, Ky. 694 S.W.2d 672 (1985); *Harper v. Commonwealth*, Ky. 694 S.W.2d 665 (1985); and *Kordenbrock v. Commonwealth*, Ky. 700 S.W.2d 384 (1985).

Jury selection required two days. Tamme selects nine words, phrases or questions which he argues are grounds for reversible error. None of these phrases, either individually or collectively misled the jury. The jury selection process, taken as a whole, did not undermine the responsibility of the jurors in regard to the imposition of the death penalty. The jurors were not repeatedly exposed to the complained of references. The prosecutor did not dwell on any of the challenged remarks. The references were only a very small part of

the total information presented to each of the 62 different jurors over the two-day period. The responsibility of the jurors was not diminished.

During the almost one-half hour penalty phase summation by the prosecutor, the word "recommendation" was used only three times. The summation emphasized the responsibility of the jury. Defense counsel also placed the responsibility for sentencing squarely on the jury.

Generally, evidence of other crimes is inadmissible except in very limited circumstances. *See O'Bryan v. Commonwealth,* Ky. 634 S.W.2d 153 (1982). Here the references to other offenses were admissible and relevant to the killings. Collateral criminal activity can be relevant when connected in a special way to the charged crime. *Spencer v. Commonwealth,* Ky. 554 S.W.2d 355 (1977). Here the references were necessary to prove the relationship between the victims and the major participants, the means by which the crimes were committed, plan involved in committing the murders, the true identity of the responsible party, the absence of mistake and the concealment of the crime. The probative value outweighs the possibility of any prejudice. *O'Bryan, supra.* It was clearly impossible to avoid any reference to marijuana. The victims were killed in a marijuana field. It was marijuana that brought all the participants together. It is patently unrealistic to direct that the jury only needs to be told that the victims were occasional employees of Tamme and were shot in a field where they worked.

The majority opinion indicates that it disagrees with the position of the prosecution regarding the relevance of the evidence, but admits that the evidence in question was marginally probative. The questions regarding the weight of the evidence really address themselves to the jury or to the sound discretion of the trial judge. There is no basis demonstrated in the majority opinion for the reviewing court to substitute its opinion for that of the trial judge.

Considering the heinous nature of the crimes which involved the shooting of both victims twice and the burning of their bodies in a shallow grave, it defies common sense to say that the jury would be unduly prejudiced by a reference to other bad acts by the defendants. All of the references to other activities were justified, relevant and material. It was not reversible error to allow their admission into evidence.

The judgment of conviction should be affirmed in all respects.