Charles Wayne BUSSELL, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

April 21, 1994.

As Modified May 25, 1994.

Rehearing Denied Sept. 29, 1994.

Donna L. Boyce, Oleh R. Tustaniwsky, Asst. Public Advocates, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Kent T. Young, Sharon Kay Hilborn, Asst. Attys. Gen., Crim. Appellate Div., Frankfort, for appellee.

WINTERSHEIMER, Justice.

Charles Wayne Bussell, a black man, appeals from a judgment based on a jury verdict which convicted him of the murder and robbery of an elderly white woman. An all-white jury fixed his sentence at death for the murder and twenty years in prison for the robbery.

The victim disappeared from her home on December 1, 1990. Her body was found at the county fairgrounds on February 23, 1991. She had been strangled. Following a four-day trial, the jury found that the murder was committed by Bussell while he was engaged in the commission of first-degree robbery. The penalty phase followed and on January 17, 1992, a sentencing hearing was held. The trial judge imposed a sentence of death on the murder conviction and twenty years on the robbery conviction to run concurrently.

On appeal, Bussell raises thirty-five allegations of error. We have carefully reviewed all the issues presented by Bussell and this Opinion will concentrate in detail on eight specific assignments of error. The remaining issues are so obviously without merit they will not be specifically addressed in this Opinion.

## I  Recusal

■ Bussell's motion to recuse the trial judge was untimely and denial did not amount to reversible error. The trial judge did not violate Bussell's rights to due process, a fair trial and reliable sentencing by refusing to recuse himself. This Court has carefully reviewed the video tape of all the proceedings and concludes that reversible error did not occur. Although the conduct of the trial judge was not a textbook example of judicial patience, we find no violation of the defendant's rights.

Bussell was indicted on April 11, 1991. The trial judge stated on the record that he had represented Bussell on a murder case seventeen years earlier in 1974. At the beginning of the hearing conducted on June 13, defense counsel stated that he and Bussell had discussed the question of recusal and they "didn't see any reason to do that ..." The trial judge indicated some willingness to recuse on June 13, if a motion was made at that time. Defense counsel said, "The defense does not wish to, your Honor." Bussell clearly waived any objection to the trial judge sitting on the case at that time. However, approximately five months later, a written motion to recuse was filed, six days before the trial was to begin. The judge overruled the motion.

Three grounds were stated in the motion to recuse. The first was that the judge had previously represented Bussell in a felony criminal matter in the U.S. District Court in 1974 for which Bussell was sentenced and sent to Federal prison. This allegation is factually incorrect. The trial judge explained on June 13, that his prior representation of Bussell was in state court on a murder charge which ultimately resulted in a dismissal rather than a conviction. The record indicates that after the trial of one of the codefendants in 1974, Bussell dismissed his first attorney who was the current trial judge, and hired different counsel. The motion presents nothing new that the trial judge would have learned through his representation of Bussell which would render the trial judge biased. Prior dismissal of a criminal charge against Bussell was not an element of this case, and the trial judge did not have to rule on any such question. *Cf. Commonwealth v. Carter*, Ky., 701 S.W.2d 409 (1985).

■ The second allegation in the recusal motion was that the trial judge had ruled on an ex parte motion for a search warrant. This claim is without merit. Recusal is appropriate only when the information is obtained from an extrajudicial source. *Marlowe v. Commonwealth*, Ky., 709 S.W.2d 424 (1986). The final allegation was that there was public disclosure of confidential information regarding Bussell's competency evaluation, including the fact that he refused to

cooperate with the first psychologist who attempted to examine him. These claims were made on the basis of certain newspaper reports which reported the fact of Bussell's competency. It is obvious that the question of competency is public and would have become known as soon as the trial started. The newspaper reports do nothing more than report that Bussell was found competent to stand trial. The fact of trial competency is not confidential and can readily be ascertained from the public record in the case. Bussell was not prejudiced by any information released by the trial judge.

■ There was nothing new presented on November 6, 1991, which had not already come to the attention of or should have been known by Bussell or his counsel on June 13, 1991. A motion for recusal should be made immediately upon discovery of the facts upon which the disqualification rests. *Bailey v. Bailey*, Ky., 474 S.W.2d 389 (1972); *Kohler v. Commonwealth*, Ky., 492 S.W.2d 198 (1973). Otherwise, it will be waived. Here Bussell knew or should have known about the prior representation either from his own knowledge or the hearing of June 13. No motion was made at that time and counsel, with Bussell present, expressly declined to make such a motion. The defendant did not act expeditiously. The refusal of the trial judge to recuse himself from the impending trial did not constitute reversible error.

## II  Sympathy for Victim

■ Bussell argues that he was denied a fair trial because the prosecutor was permitted to present allegedly prejudicial inflammatory evidence from the victim's sister and son in order to elicit sympathy for the victim. The victim's sister testified that they had lived in Christian County for a long time because their father was a Methodist minister and the son identified a photograph of his mother wearing her sapphire ring which was taken during the robbery. He also told the jury about her philanthropic work. The prosecutor reminded the jury during the penalty phase closing argument that the victim had a sister and a son.

The testimony presented and the Commonwealth's Attorney's remark about the victim did not amount to reversible error. This Court has recognized that a certain amount of background evidence regarding the victim is relevant to understanding the nature of the crime. *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988); *See also McQueen v. Commonwealth*, Ky., 669 S.W.2d 519 (1984). This Court has previously held that it was not error in the guilt phase when the testimony of the wife merely called the attention of the jury to the fact that the victim was once a living person rather than a statistic. *Templeman v. Commonwealth*, Ky., 785 S.W.2d 259 (1990). This case is similar to *Campbell v. Commonwealth*, Ky., 788 S.W.2d 260 (1990), in that the prosecution did not dwell on the victim and did not unnecessarily incite the passion of the jury to the prejudice of the defendant.

A careful examination of the record indicates that there was no reversible error in view of the total picture given to the jury. The testimony merely reflects the facts relevant to the situation at hand. There was no undue prejudice to the accused.

## III  Penalty Phase Instructions

■ Bussell contends that the jury instructions during the penalty phase were inadequate, incomplete and denied him due process of law and reliable sentencing. Bussell claims that the jury should have been instructed that it can impose a life sentence, even if it found an aggravating factor beyond reasonable doubt. *Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980), stated that the jury did not have to return a death sentence even though aggravating circumstances existed.

Here Instruction No. 4 clearly advises the jury that it could recommend a sentence of life. The verdict forms also so indicate. The penalty phase instructions did not deny Bussell due process or reliable sentencing and were proper. *Smith v. Commonwealth*, Ky., 599 S.W.2d 900 (1980).

Bussell also contends that the use of the word "recommend" entitles him to a new penalty phase. We do not agree. The trial judge used the word "recommend" in two isolated instances in the penalty phase in-

structions. No objection was made at trial to the penalty phase instructions on this basis. The issue was not properly preserved pursuant to RCr 9.54(2).

*Grooms v. Commonwealth*, Ky., 756 S.W.2d 131 (1988), a death penalty case, admonished defense counsel to comply with the preservation rule, even in death penalty cases. However, we will consider this allegation of error in context. The penalty phase instructions use the word "fix" at least five times in the instructions. All of the penalty phase verdict forms use the word "fix." The front page of the penalty phase instructions advises the jury as follows: "Having heretofore found the defendant guilty you shall now proceed to *fix* his punishment on the charge or charges of which you have found him guilty." (Emphasis added.) Penalty Phase Instruction No. 4 directs the jury as to authorized sentences and also uses the term "fix." Penalty Phase Instruction No. 1 also uses the term "fix."

This Court has repeatedly denounced the use of the term "recommend" despite the fact that it appears in the sentencing statute. *Grooms, supra, Sanders v. Commonwealth,* Ky., 801 S.W.2d 665 (1991), and *Tamme v. Commonwealth,* Ky., 759 S.W.2d 51 (1988) are among the cases holding that the word "recommend" may not be used in capital cases with regard to the sentencing responsibilities of the jury. This Court's repeatedly announced concern that the use of the word "recommend" might diminish a jury's sense of responsibility for fixing a capital defendant's sentence, coupled with repeated use of the term by prosecutors, might constitute an abuse. Here, there was a technical violation in two isolated instances of the prohibition announced in *Tamme, supra,* but there was no objection by the defense. Even if the failure to object was not a trial strategy, the erroneous use of the word "recommend" was not unduly prejudicial to the defendant. Considering all the circumstances, we are convinced that the duty of the jury was not in any way diminished in this case. At the most, there was a brief reference to the language of the death penalty sentencing statute, KRS 532.025. There was no reversible error.

## IV  Directed Verdict

Bussell claims that there was reversible error and substantial prejudice because the trial court did not grant his motions for directed verdicts of acquittal on both the murder and robbery charges. We disagree. Bussell was not entitled to a directed verdict of acquittal because the evidence was more than sufficient to allow a reasonable juror to find guilt as to both murder and robbery in the first degree.

Bussell moved for a directed verdict at the close of the prosecution's case and renewed his motion at the close of all the evidence on the basis of insufficient evidence of guilt. A reviewing court does not have to reevaluate the proof because its only function is to consider the decision of the trial judge in light of the evidence presented at trial. *Commonwealth v. Benham,* Ky., 816 S.W.2d 186 (1981). A careful review of the record makes it clear that there was more than sufficient evidence to overcome a motion for a directed verdict based on the sufficiency of the evidence. Circumstantial evidence is sufficient to support a criminal conviction as long as the evidence taken as a whole shows that it was not clearly unreasonable for the jury to find guilt. *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977); *Benham, supra.*

## V  Premature Sentencing Decision

Bussell argues that his Federal constitutional rights under the Sixth, Eighth and Fourteenth Amendments were violated by the premature decision of the trial judge to impose the death penalty. He says that the final judgment had already been prepared and that the trial judge's report required by KRS 532.075(1) had been completed prior to the final sentencing hearing. He states that the trial judge had already made up his mind as to the sentence he would impose because the final judgment had been prepared and the trial judge's report completed.

A careful review of the record indicates that the trial judge conducted a proper sentencing hearing and heard evidence and argument on behalf of the accused concerning the propriety of the death sentence. Wheth-

er the trial judge had prepared a tentative draft of a final judgment prior to the formal sentencing did not affect the fact that he heard and considered the evidence and the arguments before entering a final sentencing judgment. The trial judge followed the directions for sentencing set out in *Matthews v. Commonwealth*, Ky., 709 S.W.2d 414 (1986). The record does not support any contention that the trial judge refused to consider under any circumstances a reduction of the sentence as fixed by the jury. *McClellan v. Commonwealth*, Ky., 715 S.W.2d 464 (1986).

The trial judge's report pursuant to KRS 532.075(1) is a standard questionnaire filed after the imposition of sentence in order to be forwarded to this Court with the court record. The trial judge's report is not prepared for the benefit of the trial judge but rather for the reviewing court. The record in this case does not support any argument that the trial judge refused to consider under any circumstances a reduction of the sentence fixed by the jury. *McClellan, supra.*

## VI  Insufficient Evidence

Bussell contends that the death sentence violates his Federal constitutional rights and should be reduced to life imprisonment because the evidence does not foreclose all doubts about his guilt.

■ Residual doubt of guilt is not a mitigating circumstance. The alleged lack of instruction on relevant statutory mitigators and the alleged lack of instruction on nonstatutory mitigators, as well as the other allegations of instruction errors, are not convincing as reversible error. Here the jury was permitted to consider relevant mitigating evidence and found the existence of aggravating circumstances beyond a reasonable doubt. The jury findings are sufficient to support a death sentence. *Skaggs v. Commonwealth*, Ky., 694 S.W.2d 672 (1985). This Court has repeatedly upheld the constitutionality of the death penalty statute.

## VII  Death Penalty Arbitrarily Applied

■ Bussell asserts that the death penalty in Kentucky operates in an arbitrary, discriminatory and freakish manner as to blacks or African Americans who kill whites and females and therefore is unconstitutional as applied. He contends that the arbitrariness and discrimination found in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), still exists in Kentucky notwithstanding sixteen years of guided direction.

In his reply brief, Bussell introduces for the first time a study mandated by the 1992 General Assembly which collected and analyzed cases of all persons indicted, convicted and sentenced for murder from 1976 through 1991. He claims that the results of this study show that capital charges were most likely sought against blacks who killed whites, that blacks who killed whites also had the highest percentage of cases involving a death penalty, that the circumstance of a black defendant and white victim was one of the top three factors in determining who is most likely to be charged with a capital crime, and that blacks who kill whites are more likely to receive a death sentence.

The United States Supreme Court in *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), a case in which the defendant was black and the victim white, rejected a similar type of challenge to the application of the death penalty statute in Georgia. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665 (1990), held that the argument that the death penalty in Kentucky operates in an arbitrary, discriminatory and freakish manner has been repeatedly presented, considered and dismissed.

The introduction of a 1992 study by means of an appendix to the reply brief obviously gives the Attorney General no opportunity to respond in any fashion. The study itself does not give an answer because it indicates it is difficult, if not impossible, to control any perceived racial bias through judicial review. Certainly this Court must do everything possible to avoid any kind of actual or perceived institutional racism that would contribute to Bussell's death sentence or to anyone else's death sentence. In this case, there is no logical connection between the crime, the imposition of the death penalty and racial bias.

## VIII Proportionality Review

The death sentence imposed on Bussell was not inappropriate, arbitrary, discriminatory, unusual or disproportionate. The sentence was not fixed because he was black or because the victim was white. The sentences were imposed because he was found guilty as charged.

Pursuant to KRS 532.075, we have made a careful review of the record and have determined that the death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor. The death sentence was not excessive or disproportionate to the penalty imposed in similar sentences since 1970 considering both the crime and the defendant. Those cases have been previously recited by this Court most recently in *Simmons v. Commonwealth*, Ky., 746 S.W.2d 393 (1988). That list is incorporated herein by reference and our review in this case is in accordance with KRS 532.-075(5). In addition, we have also considered the case of *Moore v. Commonwealth*, Ky., 771 S.W.2d 34 (1989); *Epperson and Hodge v. Commonwealth*, Ky., 809 S.W.2d 835 (1991); *Taylor v. Commonwealth*, Ky., 821 S.W.2d 72 (1991), and *Wilson v. Commonwealth*, Ky., 836 S.W.2d 872 (1992). We have conducted an independent review of all the circumstances and conclude that they exceed any minimum justifying capital punishment.

The judgment of conviction is affirmed.

LAMBERT, LEIBSON, REYNOLDS and SPAIN, JJ., concur.

STEPHENS, C.J., dissents by separate opinion in which STUMBO, J., joins.

STUMBO, J., dissents by separate opinion, in which STEPHENS, C.J., joins.

STEPHENS, Chief Justice, dissenting.

Respectfully, I dissent.

In *Tamme v. Commonwealth*, Ky., 759 S.W.2d 51 (1988), this Court announced a simple rule, unconditionally stated, that could not have been more unambiguous: "Furthermore, we hold that in capital cases in which the trial commences after the effective date of the finality of this opinion, the word 'recommend' *may not be used* with reference to a jury's sentencing responsibilities in voir dire, instructions or closing arguments." *Id.* at 53. (Emphasis added). By its treatment of the *Tamme* violation in this case as merely "technical," the majority view obscures well-defined waters and encourages an impression that this Court does not mean what it says.

In pre–*Tamme* cases,[1] the one thing certain was that there was no certain line. Hence, the *Tamme* mandate. The soundness of the *Tamme* prohibition lies in the total absence of any competing consideration that weighs in favor of use of the word, "recommend." In fact the only possible value in using the word is to accomplish, in some measure, the forbidden effect. On the other side, the constitutional importance of foreclosing any possibility of diminution of a jury's sense of sentencing responsibility in a capital case was carefully developed in *Tamme* and should be patently clear.

Reversal of a death sentence based on this issue should not turn on whether the word "fix" outnumbers the word "recommend" in the jury instructions. Nor is this a matter of simple semantics. The majority contends that appellant was not prejudiced by the "two isolated instances" where the jury instructions told the jury that it would "*recommend*" a sentence for the defendant. Yet, there was the word "recommend," in black and white, on instructions that were actually carried into the jury room to assist the jury in deliberation. Without special insight, I cannot comfortably claim that no one juror was not influenced by the idea that the jury was only "recommending" the defendant be put to death. That was the point of the rule in *Tamme*. I respectfully dissent in its demise.

STUMBO, J., joins this dissenting opinion.

---

1. *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984); *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985); *Kordenbrock v. Commonwealth*, Ky., 700 S.W.2d 384 (1985); *Matthews v. Commonwealth*, Ky., 709 S.W.2d 414 (1986); *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988) and *Grooms v. Commonwealth*, Ky., 756 S.W.2d 131 (1988).

STUMBO, Justice, dissenting.

Respectfully, I must dissent. I concur fully in the dissent prepared by Chief Justice Stephens, but I also would hold that the prosecution was permitted to improperly introduce evidence for the sole purpose of eliciting sympathy for the victim, thereby denying the appellant a fair trial and objective sentencing. *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988); *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984); and *Morris v. Commonwealth*, Ky., 766 S.W.2d 58 (1989).

STEPHENS, C.J., joins in this dissent.