# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

RENDERED: JUNE 15, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0480-MR

ISHMAIL T. POWELL          APPELLANT

V.        ON APPEAL FROM BOONE CIRCUIT COURT
HONORABLE JAMES R. SCHRAND, II, JUDGE
NO. 19-CR-00692

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A Boone County jury found Appellant Ishmail T. Powell (Powell) guilty of murder, attempted murder, tampering with physical evidence, and being a persistent felony offender in the first degree (PFO I). In accordance with the jury's recommendation, as enhanced, the trial court sentenced Powell to a total of fifty years in prison. Powell raises three issues on appeal. He claims the trial court erred by (1) failing to dismiss the indictment pursuant to RCr[1] 8.18, (2) allowing into evidence irrelevant testimony regarding the murder victim, and (3) failing to grant a directed verdict on the charges. Upon review, we affirm the Boone Circuit Court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of Sunday, July 21, 2019, a melee, described by participants as a "cluster" fight, broke out at a pizza restaurant/bar in

---

[1] Kentucky Rule of Criminal Procedure.

Boone County, Kentucky. Stephen Dodson (Dodson) was stabbed and died at the scene. Malcolm Willoughby (Willoughby) was also stabbed; he survived his life-threatening injuries. A Boone County grand jury returned an indictment charging Powell with (1) murder, (2) attempted murder, (3) tampering with physical evidence, and (4) becoming a persistent felony offender in the first degree. Prior to trial, Powell moved the trial court to dismiss the indictment. The trial court denied the motion.

At trial, witnesses providing testimony about the fight included patrons involved in the fight and restaurant staff and patrons who witnessed the fight. Some witnesses testified that they did not see Powell in the restaurant that night, some testified that they saw him in the restaurant but did not see him fighting, and some testified that they did see him fighting. Josh King (King) was the only witness who testified that he saw Powell with a knife at the restaurant. King testified that Powell jokingly put the knife to his stomach and threatened to gut him and that Powell was playing with the knife throughout the night. None of the witnesses saw Powell stab the victims.

A week after the fight, detectives received an anonymous tip that the knife used in the stabbing had been thrown in a sewer drain. Detectives obtained surveillance videos from area establishments. One video showed an individual stopping and bending over the sewer drain on the night of the fight. In that area, a knife was found just inside the pipe leading to the storm drain. Forensic testing on the knife and clothing did not provide incriminating evidence against Powell; in particular, the swabs of the knife handle and knife blade had insufficient DNA for analysis.

2

King was the Commonwealth's primary witness against Powell. According to King, Powell confessed to him later on the day of the fight that he stabbed the two victims; he stabbed one victim as he fought with their friend Leon, and he stabbed the other victim as he fought with King. King further testified that Powell also stated that after the stabbings, he ran out the door and threw the knife in a sewer drain.

King shared with his then girlfriend that Powell confessed to him that Powell stabbed the victims.[2] Although the girlfriend encouraged King to go to the police, King did not inform the police about Powell's confession right away. According to King's testimony, King did not look at Powell the same again after Powell told him that he killed somebody, and he took Powell's actions as a threat. Consequently, during his first police interview, he did not mention Powell's confession or say anything about the knife. Afterward, he provided the anonymous tip about the knife being thrown into the drain. King testified that he was not forthcoming to police about Powell's confession because Powell was still on the street. About one month after the stabbings and within a week of Powell's arrest, King told Detective Dickhaus in a recorded interview about Powell's confession.

At trial, Powell maintained his own theory of who stabbed the victims. He suggested the true perpetrator was King.

---

[2] King also told another friend, Mike, that Powell confessed to stabbing the victims. Both King and Mike were questioned by the defense as to whether King actually told Mike that someone other than Powell had stabbed the victims.

The jury found Powell guilty of the crimes charged. The jury recommended that Powell serve the following PFO I enhanced sentences concurrently for a total sentence of fifty years in prison: fifty years for committing murder, thirty years for committing attempted murder, and ten years for tampering with physical evidence. The trial court sentenced Powell accordingly.

Powell brings three issues on appeal. Each issue is addressed in turn. Additional facts are presented as necessary.

## ANALYSIS

### I. The Trial Court Did Not Abuse Its Discretion By Denying Powell's Motion to Dismiss the Indictment.

Powell claims that the trial court erred in failing to dismiss the indictment pursuant to RCr 8.18 and alleges that his due process rights were violated. He claims that the Commonwealth presented false statements to the grand jury when Detective Dickhaus testified to statements King did not make.

Detective Dickhaus recorded two interviews with King. During the second interview, King told Detective Dickhaus about his visit with Powell during which Powell admitted stabbing the victims. King did not provide information in the interview about the number of times Powell stabbed the victims.

During the Commonwealth's presentation to the grand jury, the Commonwealth asked Detective Dickhaus if Powell admitted to King that he stabbed Dobson and Willoughby five times each and Detective Dickhaus stated that was correct. When asked by the Commonwealth whether the witness had

4

seen any sort of autopsy report or anything that would give him the information on how much each victim had been stabbed, Detective Dickhaus stated no.

Powell argues that the blatantly false statement from the Commonwealth and Detective Dickhaus's misstatement of a key piece of evidence were used by the Commonwealth to indict Powell and therefore, the indictment must be dismissed.

RCr 8.18(1)(b) provides that except for good cause shown, a motion alleging a defect in the indictment shall be raised before trial. Consistent with RCr 9.24,[3] the criminal trial harmless error rule, RCr 6.12 provides that an indictment is not invalid because of a defect that constitutes harmless error. RCr 6.12 states: "An indictment . . . shall not be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested or in any manner affected by reason of a defect or imperfection that does not tend to prejudice the substantial rights of the defendant on the merits."

---

[3] RCr 9.24 states in full:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order, or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

In *Bank of Nova Scotia v. United States*,[4] the United States Supreme Court considered the role of the federal harmless error rule, a rule comparable to Kentucky's, when the trial court is asked to dismiss an indictment for prosecutorial misconduct. The Supreme Court concluded that a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a); that rule provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."[5] The Supreme Court held that, as a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants.[6] More specifically, a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant.[7] The Supreme Court concluded that when dismissal is sought for nonconstitutional error, the dismissal may be properly granted "if it is established that the violation substantially influenced the grand jury's decision to indict," or "if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations."[8,9]

---

[4] 487 U.S. 250 (1988).

[5] *Id.* at 254-55.

[6] *Id.* at 254.

[7] *Id.* at 255 (citing *United States v. Mechanik,* 475 U.S. 66 (1986)).

[8] *Id.* at 256 (quoting and adopting the standard articulated by Justice O'Connor in her concurring opinion in *Mechanik,* 475 U.S. at 78).

[9] The Supreme Court also explained that a class of cases exist in which indictments may be dismissed without a particular assessment of the prejudicial impact of the errors because the errors are deemed fundamental, cases in which the structural protections of the grand jury have been compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice. *Id.* at 257.

In *Commonwealth v. Baker*,[10] the Court of Appeals adopted the harmless error standard pronounced in *Bank of Nova Scotia*[11] and, in consideration of other federal authority, explained that "[a] court may utilize its supervisory power to dismiss an indictment where a prosecutor knowingly or intentionally presents false, misleading or perjured testimony to the grand jury that results in actual prejudice to the defendant."[12] *Baker* thus presents a two-part test: (1) Was there prosecutorial misconduct? 2) If so, was the misconduct prejudicial to the defendant? Considering *Baker*, the trial court denied Powell's motion to dismiss.

On appeal, Powell argues that the trial court erred in finding that the false testimony by Detective Dickhaus did not substantially influence the grand jury's decision to indict him. Powell asserts that the knowingly false testimony to the grand jury could only bias the grand jury against him and that the grand jury hearing that King knew how many times Powell stabbed each victim without seeing the autopsy report added false credibility to King's allegations in this case.

Under the trial court's *Baker* analysis, the circumstances of this case constituted harmless error. First, the trial court did not find that the Commonwealth intended to use a false statement as evidence before the grand jury, hence, there was no finding of prosecutorial misconduct. However, Powell

---

[10] 11 S.W.3d 585 (Ky. App. 2000).

[11] *Id.* at 588.

[12] *Id.* at 588-89 (citing *United States v. Adamo*, 742 F.2d 927 (6th Cir. 1984); *United States v. Soberon*, 929 F.2d 935 (3d Cir. 1991); and *United States v. Roth*, 777 F.2d 1200 (7th Cir. 1985)).

does not now challenge the trial court's finding that there was no prosecutorial misconduct. Instead, Powell complains that Detective Dickhaus fabricated the false statement to bolster the credibility of the only witness that alleged that Powell stabbed anyone at the restaurant.

Without a challenge to the trial court's finding of no prosecutorial misconduct, Powell's complaint on appeal that Detective Dickhaus's false testimony substantially influenced the grand jury's decision to indict him comes down to a challenge of the competence of the evidence presented to the grand jury, a challenge which is not sufficient to require a dismissal of the indictment. As expressed in RCr 5.10, "The grand jurors shall find an indictment where they have received what they believe to be sufficient evidence to support it, but no indictment shall be quashed or judgment of conviction reversed on the ground that there was not sufficient evidence before the grand jury to support the indictment." The premise that a grand jury's indictments are not open to challenge on the ground that there was inadequate or incompetent evidence is also reflected in *Costello v. United States*,[13] a case discussing long-recognized authority that a court may not look behind the indictment to determine if the evidence upon which it was based is sufficient.[14] *Costello* explains that "[a]n indictment returned by a legally constituted and

---

[13] 350 U.S. 359 (1956).

[14] *See id.* at 363 (citing *United States v. Reed*, 27 F. Cas. 727 (C.C.N.D. N.Y. 1852); *Holt v. United States*, 218 U.S. 245 (1910)).

unbiased grand jury, . . . if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."[15]

We conclude that the trial court did not abuse its discretion by denying Powell's motion to dismiss.[16] Even if the trial court had concluded there was prosecutorial misconduct, Powell was not entitled to the relief sought. While Detective Dickhaus's statement that Powell told King the number of times he allegedly stabbed the victims may have been false, there were sufficient grounds for the indictment based upon the other testimony the grand jury heard. Like the trial court concluded, the grand jury was still able to independently indict Powell as the jurors heard testimony that Powell admitted to King that he stabbed the victims, irrespective of the number of times he stabbed them.

## II. The Trial Court Did Not Commit Palpable Error by Admitting Testimony Which Provided Background Information about the Murder Victim.

Powell's second claim is that the trial court erred by allowing Dodson's mother, Mrs. Hern, to testify. He claims that her testimony was irrelevant, and more prejudicial than probative. Powell seeks RCr 10.26 palpable error review.[17]

---

[15] *Id.* (internal citation omitted).

[16] The test for abuse of discretion "is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

[17] RCr 10.26 states:

    A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved

Mrs. Hern was the Commonwealth's first witness. She testified that Dodson was her youngest son, that she called him "Bear," that Dodson had lived with her the last two years of his life, and that her daughters informed her that Dodson had passed away. Powell did not object to this testimony based upon its relevancy.[18] On appeal, he complains that the testimony was irrelevant because Mrs. Hern had no personal knowledge of the events at the restaurant and was not present that night.

"All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the Commonwealth of Kentucky, by Acts of the General Assembly of the Commonwealth of Kentucky, by [the Kentucky Rules of Evidence], or by other rules adopted by the Supreme Court of Kentucky."[19] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[20] Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or

---

for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

[18] Defense counsel objected to the Commonwealth's question about how Mrs. Hern heard of her son's death; the objection was based on the testimony arousing the emotions of the jury. The trial court sustained the objection. The Commonwealth withdrew the question and asked Mrs. Hern who informed her of her son's death.

[19] Kentucky Rule of Evidence (KRE) 402.

[20] KRE 401.

misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[21]

Citing *Bussell v. Commonwealth*,[22] Powell recognizes that "a certain amount of background evidence regarding the victim is relevant to understanding the nature of the crime." However, Powell views Mrs. Hern's testimony as going beyond providing background for who Dodson was and as glorifying him as a youngest son named "Bear" who was living with his mother the last two years. Citing *Bennett v. Commonwealth,* Powell argues that Mrs. Hern's testimony was "intended to arouse sympathy for the families of the victims, which, although relevant to the issue of penalty, is largely irrelevant to the issue of guilt or innocence."[23] In regard to Powell's argument, this Court has stated:

> A murder victim can be identified as more than a naked statistic, and statements identifying the victims as individual human beings with personalities and activities does not unduly prejudice the defendant or inflame the jury. Just as the jury visually observed the appellant in the courtroom, the jury may receive an adequate word description of the victim as long as the victim is not glorified or enlarged.[24]

More recently, this Court has stated that "[t]he line between relevant-background information and prejudicial-impact testimony is a narrow one; but we essentially distinguish the two forms of testimony by inquiring whether the

---

[21] KRE 403.

[22] 882 S.W.2d 111, 113 (Ky. 1994).

[23] 978 S.W.2d 322, 325 (Ky. 1998).

[24] *Bennett,* 978 S.W.2d at 325 (quoting *Bowling v. Commonwealth*, 942 S.W.2d 293, 302–03 (Ky. 1997) (internal citation omitted), *overruled on other grounds by McQueen v. Commonwealth*, 339 S.W.3d 441 (Ky. 2011)).

witness was overly emotional, condemnatory, or accusatory in nature.[25.]  Like

the Court in *Roe*, after review of the testimony in this case and the

characteristics unique to victim-impact information, we conclude the trial court

did not commit palpable error by allowing Mrs. Hern's testimony into evidence.

The testimony Powell complains about provides background information,

tending to establish the type of relationship Dodson shared with his mother,

rather than any "physical, psychological, or financial" harm[26] Dodson's death

caused Mrs. Hern.  Here, Mrs. Hern's testimony was not emotional,

condemnatory, or accusatory in any way.  She testified only briefly and during

that time remained composed as she spoke about her son.  Any error was not

"easily perceptible, plain, obvious and readily noticeable" and was not so grave

in nature that uncorrected, it seriously affected the fairness of the

proceedings.[27]

## III.     The Trial Court Did Not Abuse Its Discretion by Denying a Directed Verdict.

Powell's last claim is that the trial court erred by failing to grant a

directed verdict on each of the three charges.

When reviewing a defendant's motion for a directed verdict,

> the trial court must draw all fair and reasonable inferences from
> the evidence in favor of the Commonwealth.  If the evidence is
> sufficient to induce a reasonable juror to believe beyond a
> reasonable doubt that the defendant is guilty, a directed verdict
> should not be given.  For the purpose of ruling on the motion, the
> trial court must assume that the evidence for the Commonwealth

---

[25] *Roe v. Commonwealth*, 493 S.W.3d 814, 823-24 (Ky. 2015) (citation omitted).

[26] *See* Kentucky Revised Statute (KRS) 532.055(2)(a)(7).

[27] *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (citations omitted).

is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.[28]

"As stated in *Sawhill*,[29] there must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence."[30] "In the end, a trial court should only grant a directed verdict when 'there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ.'"[31]

Powell argues that the Commonwealth did not meet its burden of producing more than a scintilla of evidence on the three charges and citing *Schoenbachler v. Commonwealth*,[32] argues that his Due Process rights were violated when the trial court denied his directed verdict motions because there was insufficient evidence to support a conviction. Powell argues that the evidence against him was no more than a scintilla because there was only a possibility that Powell confessed to the stabbings and disposing of a knife and that in order to convict him of committing the crimes, the jury had to pile inference on top of inference. He argues that under *Francis v. Franklin*'s[33] and *Ulster County Court v. Allen*'s[34] guidance, cases which respectively address jury

---

[28] *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

[29] *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983).

[30] *Benham*, 816 S.W.2d at 187-88.

[31] *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 285 (Ky. 2014) (quoting *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998)).

[32] 95 S.W.3d 830, 836-37 (Ky. 2003).

[33] 471 U.S. 307, 314-15 (1985).

[34] 442 U.S. 140, 156 (1979).

instruction and standing issues and discuss the role inferences play in our adversary system of factfinding, the connection between the basic underlying evidentiary fact (Powell confessed to King) and the ultimate facts to be established under the three charges was not strong enough to support a conviction. For example, Powell states that the jury had to rely on the inference that King, who the jury heard has history of lying and history of violence, was telling the truth about Powell confessing to him that he stabbed the victims and tossed the knife in the sewer drain; that Powell is the figure bending over the sewer drain in the poor-quality video provided at trial; and that Powell stabbed the victims despite no eyewitnesses and no DNA evidence. Powell asserts that when the Commonwealth argued that he confessed to committing the crimes to King, the conclusion the Commonwealth wished the jury to draw—that Powell murdered Dodson, attempted to kill Willoughby, and tampered with the knife found in the sewer drain—was "not one that reason and common sense justify in light of the proven facts before the jury."[35]

Upon review, we conclude that there was sufficient evidence for the Commonwealth to overcome a motion for a directed verdict and consequently disagree with Powell's assertions. As described above, under the directed verdict standard, the trial court must assume that the evidence for the Commonwealth is true and must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. Under this standard, evidence of Powell's guilt came from King's testimony and other circumstantial evidence.

---

[35] Citing *Francis*, 471 U.S. at 314-15.

14

Based upon King's testimony, the trial court was required to view as true that Powell confessed to King that he stabbed the victims and threw the knife down a sewer drain. In support of that confession, the trial court was required to consider other evidence that Powell was at the bar that night wearing a red hat and seen leaving the bar quickly and that a person, inferred to be Powell based on his statement to King, was seen bending over a nearby sewer drain where the knife was eventually located. Furthermore, Powell was recorded on a jail phone call attempting to get a friend to talk to King about changing his testimony.

"Circumstantial evidence is sufficient to support a criminal conviction as long as the evidence taken as a whole shows that it was not clearly unreasonable for the jury to find guilt."[36] Our review indicates that the Commonwealth produced evidence that was considerably more than a mere scintilla, that the trial judge correctly determined that a reasonable juror could fairly find guilt beyond a reasonable doubt, and that the case was properly presented to the jury for determination.

## CONCLUSION

For the foregoing reasons, the Boone Circuit Court's judgment is affirmed.

All sitting. All concur.

---

[36] *Bussell*, 882 S.W.2d at 114 (citing *Trowel v. Commonwealth*, 550 S.W.2d 530 (Ky. 1977); and *Benham*, 816 S.W.2d 186 (Ky. 1981).

COUNSEL FOR APPELLANT:

Jason Apollo Hart
Apollo Law PLLC

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Kenneth W. Riggs
Assistant Attorney General