**Garnett WARD, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 24, 1956.

Robertson & Robertson, Owensboro, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

HOGG, Judge.

Appellant, Garnett Ward, was indicted and tried for the wilful murder of her husband, Kenneth Ward, and found guilty of voluntary manslaughter, with an attached punishment of three years' confinement in the penitentiary. Her motion for a new trial was overruled and from that order and the judgment pronounced thereon she appeals, complaining the court erred (1) in refusing to direct a verdict of acquittal at the close of the Commonwealth's evidence and at the conclusion of all the evidence, and (2) in failing to instruct the jury on the whole law of the case.

On Sunday night, February 6, 1955, Kenneth Ward died as a result of a butcher knife wound suffered during an altercation with appellant. The only eyewitness to the killing was appellant. In substance, she testified that her husband, a cripple who walked with the aid of a brace, came home from work about 1:00 a. m. on February 6 in an intoxicated condition; that he imbibed some whisky and then went to bed; and that upon arising about 11:00 a. m. he resumed his drinking while she performed the household chores. They ate lunch at about 2:00 p. m., and about 4:00 p. m. she prepared a hot toddy, which they drank. She went to bed about 6:00 p. m. but her husband required her to get out of bed. After he calmed down, she again went to bed but in a short while she got up at the insistence of her husband. In the livingroom they argued considerably about their marital affairs; he threw one shoe at her and struck her with another. She ran out of the livingroom into the kitchen, from which there was no exit other than the door she used in getting into it. She turned and saw deceased coming toward her with a butcher knife in his hand. She picked up another butcher knife lying on the kitchen cabinet and started to run by him as he stood in the doorway, whereupon he grabbed her wrist, causing her to scream. They each lost their balance and he fell against her, causing the butcher knife she had in her hand to enter his body, resulting in the mortal wound. Immediately after he fell to the floor, she observed blood on the knife she held and for the first time realized he had been injured. She said she had no intention of stabbing her husband. Also, she testified he had a butcher knife drawn as if to strike her immediately before he fell against her.

The Commonwealth introduced several witnesses who visited the scene of the

killing immediately after the killing occurred. Kelly Ward and his wife testified they went to the scene within about five minutes after they got a call from appellant, and found deceased lying on the floor. A blood-stained butcher knife was found on the table, and another was on the floor near the body of deceased. They said appellant told them that "she did it." The positions of the body and the butcher knives were corroborated by three police officers and the sheriff. She told the policemen, "I did it. I didn't aim to. The knife slipped." The coroner, somewhat to the contrary, said that he went to the scene on the night of the killing and appellant told him she and her husband argued and scuffled over his not giving her enough money. Thereupon, she went into the kitchen and got two butcher knives. She further told him that in the scuffle he either slipped or fell against the knife. We quote from his testimony as to his description of the wound:

"Q. Now, describe the direction in which that wound went. A. The knife went at an angle directly to the arch of the aorta, which is the main artery of the heart.

"Q. How far would it be from the point of entry until it stopped? A. I would say approximately seven to eight inches.

"Q. Seven to eight inches? A. Yes, sir.

"Q. Running crosswise across the body from the right to the left? A. Right to the left, that's right.

"Q. And it stopped in or near the main artery of the body? A. It did stop in the main artery,—aorta."

[1] Appellant's first contention is that the court should have directed an acquittal. Where defendant admits the killing but relies upon self-defense in homicide cases, the burden is upon him to establish that he acted in self-defense. Carson v. Commonwealth, Ky., 239 S.W.2d 262. We have held that, unless the evidence convincingly established that the killing was in self-defense, it cannot be said as a matter of law that the homicide was excusable. Newsome v. Commonwealth, 287 Ky. 447, 153 S.W.2d 949; Carson v. Commonwealth, Ky., 239 S.W.2d 262. Appellant contends that the evidence was such that she should have been granted a directed verdict, relying strongly upon Holcomb v. Commonwealth, Ky., 280 S.W.2d 499, where we held that the trial judge should have instructed the jury to return a verdict of not guilty. We do not think that case is controlling here, for there the appellant's plea of self-defense was supported by uncontradicted evidence.

The case at hand is not one in which all the evidence supports the plea of self-defense, nor is it one in which the evidence convincingly establishes self-defense. It is true that appellant, by her own testimony, made out a case of self-defense, but some of the physical facts and other testimony contradict her testimony and cast some doubt upon the accuracy and truthfulness of it. While she testified that she did not have any quarrel over money with her husband, Coroner Haley testified that she told him at her house on the night of the killing that they quarrelled because her husband would not give her more money. She also testified that her husband had picked up the knife, with which he came at her, in the livingroom where he had been fixing an electric plug, but the coroner said that she told him that she got two knives from the kitchen during the quarrel. The evidence of Coroner Haley that the fatal wound was from seven to eight inches deep might well be a circumstance contradictory to appellant's version of what happened.

The second ground urged by appellant is also worthy of serious consideration. It is that the trial court failed to give instructions on the whole law of the case, especially an instruction upon the law of accidental or unintentional killing, and one upon involuntary manslaughter. From the short statement of the substance of the evidence in this case it is apparent that

appellant not only relied on self-defense but also upon the law of accidental killing. The court instructed upon wilful murder, voluntary manslaughter, self-defense, and reasonable doubt.

The case of Glover v. Commonwealth, 260 Ky. 48, 83 S.W.2d 881, is one where the facts are strikingly similar to this case. Eva Glover was tried upon the charge of murdering her husband and convicted of voluntary manslaughter. The facts of that case showed that after an argument deceased seized a butcher knife and threatened to kill her. Appellant picked up a pistol and shot him as he advanced toward her. The evidence for the Commonwealth showed that the appellant stated immediately after the killing that she did not know how the pistol happened to be discharged, and that she had no intention of killing her husband. We held that an instruction on involuntary manslaughter should have been given. Pointing out that there was some evidence tending to show that the shooting was accidental, we also held that the court erred in failing to give an instruction on accidental killing. Significantly, we pointed out that appellant's testimony to the effect that she shot her husband in self-defense did not deprive her of her right to have the jury instructed upon the question as to whether the shooting was accidental, since the evidence tended to support such a theory. See also, Crum v. Commonwealth, 196 Ky. 802, 245 S.W. 501; Howard v. Commonwealth, 260 Ky. 467, 86 S.W.2d 126. Section 525 of Roberson's New Kentucky Criminal Law and Procedure, second edition, says in part:

"* * * Under an indictment for murder or voluntary manslaughter, when there is evidence, however slight, from which the jury might find the existence of facts constituting involuntary manslaughter, it is the duty of the court to instruct them as to the law of this offense, and a failure to do so is reversible error. Thus, where the killing results from carelessness, without intention to kill, or where the testimony tends to show that the killing might have been either accidental or the result of carelessness, it is error to fail to give an instruction on involuntary manslaughter and accidental killing."

 We conclude that the evidence in this case was sufficient to require the court to instruct the jury on involuntary manslaughter and accidental killing. The court failed to give such instructions; therefore, the whole law of the case was not given to the jury.

The judgment is reversed for proceedings not inconsistent with this opinion.