Raleigh ESTEP, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 1999–SC–0814–DG.

Supreme Court of Kentucky.

Jan. 17, 2002.

Mark Wettle, Louisville, for appellant.

A.B. Chandler, III, Attorney General, David A. Smith, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellee.

COOPER, Justice.

Appellant, Raleigh Estep, has been twice convicted of reckless homicide in the Clay Circuit Court. The Court of Appeals reversed his first conviction in an unpublished opinion because of the trial court's failure to either dismiss the indictment or give the jury a "missing evidence" instruction pertaining to the Commonwealth's failure to preserve potentially exculpatory evidence. *Estep v. Commonwealth*, No. 93–CA–2682–MR (1995). Unfortunately, Appellant's second conviction must also be reversed for a new trial because (1) the "missing evidence" instruction given at the second trial improperly permitted the jury to infer that an item of missing evidence, if available, would have been adverse to Appellant and favorable to the Commonwealth, and (2) the jury was improperly instructed on the issue of self-protection.

Appellant was employed as a security guard at the Big Creek Toll Plaza on the Daniel Boone Parkway in Clay County, Kentucky. His work hours were 9:00 p.m. to 5:00 a.m. Appellant admits that on September 11, 1992, he killed George Jackson, Jr., by shooting him with an SKS semiautomatic rifle but claims he did so in self-defense. According to Appellant, Jackson made a habit of driving through the toll booth without paying the toll and/or verbally abusing the toll attendant if he had to wait for the attendant to come and take his money. Appellant confronted Jackson and threatened to report his behavior to the police; whereupon, Jackson allegedly threatened to kill Appellant. Appellant testified that he observed a handgun in Jackson's vehicle at the time this alleged threat was made. Appellant subsequently reported Jackson's behavior to the Man-

chester Police Department and the Kentucky State Police.

As he was completing his shift on the morning of September 11, 1992, Appellant saw Jackson's vehicle pass through the toll plaza and head west on the parkway toward Manchester. Appellant also drove his own vehicle away from the toll plaza and headed west on the parkway. According to Appellant, he passed Jackson's vehicle shortly thereafter, and Jackson then drove his vehicle behind Appellant's vehicle, following him at close range. Twice, Jackson caused the front end of his vehicle to bump against the rear end of Appellant's vehicle. Jackson then drove his vehicle alongside Appellant's vehicle and crowded him off the roadway onto the gravel shoulder. Appellant immediately retrieved his SKS semiautomatic rifle and attempted to exit his vehicle through the driver's-side door. He was unable to fully open the door because the proximity of Jackson's vehicle had him penned in. Jackson then drove his vehicle forward, severely damaging the driver's-side door of Appellant's vehicle. Jackson then stopped his vehicle in front of Appellant's vehicle; whereupon, Appellant, allegedly fearing for his life, fired four shots through Jackson's rear window, killing Jackson. Following the shooting, Appellant drove directly to the Manchester Police Department and gave a statement to Kentucky State Police Detective Johnny Phelps. Meanwhile, Jackson made a dying declaration to a passing motorist that "the guard from the toll booth ran him down and shot him in the back."

Jackson was removed from the scene by ambulance and taken to Manchester Memorial Hospital where he was pronounced dead by the Clay County coroner. The coroner then directed hospital personnel to clean the body because members of Jackson's family were waiting outside the emergency room. Detective Phelps, who investigated the incident, testified that it was his policy in investigating a shooting to obtain gunshot residue tests from the hands of both the accused and the victim, but that he could not do so in this case because any such residue had been washed off of Jackson's hands pursuant to the coroner's directions. That was the basis for the Court of Appeals' decision to remand the first appeal for a hearing on whether the Commonwealth's failure to preserve this possible exculpatory evidence entitled Appellant to an acquittal, a suppression of evidence, a "missing evidence" instruction, or none of the above. The trial court opted for a "missing evidence" instruction.

Appellant testified that he was unaware at the time of the incident whether Jackson had actually fired any gunshots at him. However, several months later, he discovered an indentation in the passenger's-side window frame of his vehicle and what appeared to be a bullet fragment under the passenger's seat. By agreement, Charles Lanham, a Kentucky State Police firearms specialist, examined the indentation and the fragment, as well as other damage to the driver's-side door of Appellant's vehicle. He also took photographs of his findings. Lanham testified at trial that the indentation in the passenger's-side window frame was consistent with it having been struck by the fragmented bullet found under the seat. He also testified that the driver's-side door had sustained damage consistent with Appellant's story that it had been struck by Jackson's vehicle and that he found lead residue in two indentations on the outside of the driver's side door consistent with it having been struck by bullets. By the time the second trial was held, Appellant's vehicle had been repossessed by his finance company because of his failure to make monthly payments.

At the second trial, the jury was instructed, *inter alia,* as follows:

### INSTRUCTION NO. 1

#### *RECKLESS HOMICIDE*

You will find the Defendant guilty of Reckless Homicide under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A.   That in Clay County on or about September 11, 1992, and before the finding of the Indictment herein, he killed George Jackson by shooting him with a gun;

AND

B.   That in so doing, he was acting recklessly as that term is defined in Instruction No. 3.

If you find the defendant guilty under this instruction, you will say so in your verdict and no more.

### INSTRUCTION NO. 2

#### *SELF-PROTECTION*

If at the time the defendant killed George Jackson (if he did so), he believed that George Jackson was about to use physical force upon him, he was privileged to use such physical force against George Jackson as he believed to be necessary in order to protect himself against it, but including the right to use deadly physical force in so doing only if he believed it to be necessary in order to protect himself from death or serious physical injury at the hands of George Jackson, subject to this qualification:

If you believe from the evidence beyond a reasonable doubt that the Defendant was mistaken in his belief that it was necessary to use physical force against George Jackson in self-protec-tion, or in his belief in the degree of force necessary to protect himself,

AND

A.   That when he killed George Jackson (if he did so), he failed to perceive a substantial and unjustifiable risk that he was mistaken in that belief, and that his failure to perceive that risk constituted a gross deviation from the standard of care that a reasonable person would have observed in the same situation, then you will find him guilty of Reckless Homicide under Instruction No. 1.

### INSTRUCTION NO. 3

#### *DEFINITIONS*

*Recklessly* —A person acts recklessly with respect to a result or to a circumstance when he fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists.   The risk must be of such nature and degree that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

### INSTRUCTION NO. 4

#### *MISSING EVIDENCE*

If you believe from the evidence that there existed certain items that were potential evidence and a party, its agents or employees intentionally destroyed or disposed of same, you may, but are not required to, infer that these items would be, if available, adverse to the party destroying or disposing of the same and favorable to the opposing party.

Instruction No. 4 permitted the jury to draw an inference from the absence of Appellant's vehicle that any evidence with

respect to that vehicle would have been adverse to him and favorable to the Commonwealth; and while Instruction No. 2 defined the defense of self-protection, subject to a "reckless belief" qualification, Instruction No. 1 did not include the absence of the privilege to act in self-protection as an element of the offense of reckless homicide.

## I. MISSING EVIDENCE.

The basis for permitting the jury to draw an adverse inference against Appellant and in favor of the Commonwealth with respect to "missing evidence" was that the repossession of Appellant's vehicle precluded any further examination of the driver's-side door prior to the second trial. The Court of Appeals concluded that (1) Instruction No. 4 was erroneous in permitting an adverse inference against Appellant, but (2) the error was harmless. We agree with the first conclusion but disagree with the second.

The genesis of the "missing evidence" instruction is the per curiam opinion (three justices concurring, two justices concurring in result only without separate opinion) in *Sanborn v. Commonwealth*, Ky., 754 S.W.2d 534 (1988), wherein it was stated that the intentional destruction of exculpatory evidence by the Commonwealth is a Due Process violation per *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requiring (1) dismissal, (2) exclusion of the Commonwealth's evidence, or (3) an instruction permitting the jury to infer that the missing evidence, if available, would be adverse to the Commonwealth and favorable to the defendant. *Sanborn, supra*, at 539–40. There, the missing evidence consisted of tape recordings that had been intentionally erased by the Commonwealth's attorney.

Although the failure to give a "missing evidence" instruction was not an issue in *Tamme v. Commonwealth*, Ky., 759 S.W.2d 51 (1988), we held in that case that missing evidence amounts to a Due Process violation only if the evidence was intentionally destroyed by the Commonwealth or destroyed inadvertently outside normal practices. *Id.* at 54. Without reference to *Tamme, Tinsley v. Jackson*, Ky., 771 S.W.2d 331 (1989), held that a defendant was entitled to at least a "missing evidence" instruction where "significant evidence was forever lost" by the Commonwealth to the prejudice of the defendant's right to a fair trial. *Id.* at 332.

In *Johnson v. Commonwealth*, Ky., 892 S.W.2d 558 (1994), the victim, as here, was found shot to death in his vehicle (also by an SKS semiautomatic rifle). The Commonwealth impounded the vehicle and had it inspected, tested, and photographed by Charles Lanham, the same forensics expert who examined Raleigh Estep's vehicle in the case *sub judice*. Upon the completion of Lanham's inspection and tests, the vehicle was returned to the victim's father who repaired and repainted it. The trial judge gave a "missing evidence" instruction identical to that approved in *Sanborn, supra*. The defendant had tendered an instruction that would have allowed the jury to "assume" (as opposed to "infer") that the missing evidence would have been favorable to the defendant's case. We held that the defendant's tendered instruction would have erroneously required the jury to assume that all physical evidence observable on the vehicle would be exculpatory.

Finally, in *Collins v. Commonwealth*, Ky., 951 S.W.2d 569 (1997), we adopted the view expressed in *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) that, absent a showing of bad faith, the Due Process Clause is not implicated by "the failure of the State to preserve evidentiary material of which no more can

be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Collins, supra,* at 572 (quoting *Youngblood, supra,* at 58, 109 S.Ct. at 337). *Collins* held that the "missing evidence" instruction given in that case provided the defendant with "more than the process due" where the Commonwealth had merely failed to collect the evidence and any exculpatory value of the evidence was not apparent at the time it was not collected. *Id.* at 573 (quoting *State v. Youngblood,* 844 P.2d 1152, 1156 (Ariz.1993), *reversed, Arizona v. Youngblood, supra* ).

■■■ Several principles emerge from the evolution of our case law on this subject. First, the purpose of a "missing evidence" instruction is to cure any Due Process violation attributable to the loss or destruction of *exculpatory* evidence by a less onerous remedy than dismissal or the suppression of relevant evidence. Thus, there is no basis for an instruction permitting the jury to infer that missing evidence, if available, would be adverse to the defendant and favorable to the Commonwealth. *See South Carolina v. Katzenbach,* 383 U.S. 301, 323–24, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966) ("The word 'person' in the context of the Due Process Clause of the Fifth Amendment [and, presumably, the Fourteenth Amendment] cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union. . . ."). Second, the Due Process Clause is implicated only when the failure to preserve or collect the missing evidence was intentional and the potentially exculpatory nature of the evidence was apparent at the time it was lost or destroyed. None of the above precludes a defendant from exploring, commenting on, or arguing inferences from the Commonwealth's failure to collect or preserve *any* evidence. It just means that absent some

degree of "bad faith," the defendant is not entitled to an instruction that the jury may draw an adverse inference from that failure.

■■■ We need not decide whether the coroner's decision to have Jackson's body cleaned before a gunpowder residue test could be conducted entitled Appellant to a "missing evidence" instruction under *Collins, supra;* for Appellant's entitlement to that instruction is now the "law of the case." *Williamson v. Commonwealth,* Ky., 767 S.W.2d 323 (1989). More obviously, the Commonwealth was not entitled to a "missing evidence" instruction under any circumstance. Thus, we agree with the Court of Appeals that the instruction, as given, was erroneous. We do not agree, however, that the instruction was "harmless." Lanham's initial inspection of Appellant's vehicle revealed evidence from which the jury could infer that Jackson fired shots at Appellant before Appellant shot and killed Jackson. Although Appellant was unaware of any shots fired by Jackson, such evidence would give credence to Appellant's testimony that Jackson threatened to kill him and, thus, would be relevant in determining whether Appellant's belief in his need to use deadly physical force to protect himself against Jackson was a recklessly held belief sufficient to warrant a conviction of reckless homicide. KRS 503.120(1); *Commonwealth v. Hager,* Ky., 41 S.W.3d 828, 844 (2001). Instruction No. 4 permitted the jury to disregard Lanham's exculpatory evidence and, instead, infer that any evidence pertaining to the condition of the vehicle was inculpatory solely because the vehicle was no longer available for further inspection. Thus, the erroneous instruction clearly prejudiced Appellant's defense.

## II. SELF–PROTECTION.

Though Instruction No. 2 defined the nature of the defense of self-protection,

Instruction No. 1 did not include the absence of the privilege to act in self-protection as an element of the offense of reckless homicide. Once a defendant produces evidence that he acted in self-protection, the burden of proof as to that issue shifts to the Commonwealth and is assigned by including as an element of the instruction on the offense "that he was not privileged to act in self-protection." KRS 500.070(1) and 1974 Commentary thereto; *Commonwealth v. Hager, supra*, at 833 n. 1, 837–38; *cf. Slaven v. Commonwealth*, Ky., 962 S.W.2d 845 (1997). In *Slaven*, we compared the defense of intoxication to the defense of self-protection:

> Appellant asserts that since the Commonwealth has the burden to disprove the defense of intoxication, KRS 500.070(1), (3), and 1974 Commentary thereto, *Brown v. Commonwealth, supra* [Ky., 555 S.W.2d 252 (1977)], at 257, the absence of intoxication should have been included as an element of the offense of murder. However, it is the presence of intent, not the absence of intoxication, that is the relevant element of the offense. If intoxication negates intent, it would be redundant to instruct the jury that the Commonwealth must prove both intent and the absence of intoxication. Compare the defense of self-protection, which does not negate an element of the offense, but provides a justification for committing the other elements of the offense.

*Id.* at 857. In holding otherwise, the Court of Appeals quoted from the pre-code common law case of *Ward v. Commonwealth*, Ky., 287 S.W.2d 601 (1956): "Where [a] defendant admits the killing but relies upon self-defense in homicide cases, the burden is upon him to establish that he acted in self-defense." *Id.* at 602. Of course, "[under the common law,] the defendant had the burden of proof on the issue of self-defense, whereas under the

recently-enacted Penal Code the Commonwealth has it." *Pace v. Commonwealth*, Ky., 561 S.W.2d 664, 668 (1978) (Palmore, C.J., concurring), *overruled on other grounds, Grimes v. McAnulty*, Ky., 957 S.W.2d 223 (1997). *See also* 1974 Commentary to KRS 500.070 ("Once such an issue is raised the state must establish its negative beyond a reasonable doubt."); *Model Penal Code and Commentaries*, Part I, § 3.01, Comment 1, at 6 (A.L.I. 1985) ("Under Section 1.12(2), the prosecution can be silent on the question of justification unless and until evidence is adduced (typically by the defendant) in support of the defense. If there is such evidence, however, the prosecutor must disprove the defense beyond a reasonable doubt."). The Model Penal Code was the primary source of the 1974 Kentucky Penal Code. *Jones v. Commonwealth*, Ky., 830 S.W.2d 877, 878 (1992) (citing Robert G. Lawson, *Criminal Law Revision in Kentucky, Part I—Homicide and Assault*, 58 Ky.L.J. 242 (1969–70)).

■ Although Instruction No. 2 accurately described the nature of the defense of self-protection, it did not inform the jurors that the burden of proof as to that issue was on the Commonwealth, *i.e.*, that they could find Appellant guilty only if they believed from the evidence beyond a reasonable doubt that, when he shot Jackson, Appellant was *not* privileged to act in self-protection. The failure of the instructions to properly allocate the burden of proof on this issue constituted prejudicial error.

■ Both of Appellant's trials were held prior to our decision in *Elliott v. Commonwealth*, Ky., 976 S.W.2d 416 (1998). Under the regime of *Shannon v. Commonwealth*, Ky., 767 S.W.2d 548 (1988), which was overruled by *Elliott*, self-protection was unavailable as a de-

fense to a charge of reckless homicide. Appellant did not request an instruction on self-protection at his first trial and the issue was neither raised nor addressed on the first appeal. At the second trial, Appellant objected to Instruction No. 1 because it failed to include the absence of the privilege to act in self-protection as an element of the offense of reckless homicide. He also tendered a correct instruction. The Commonwealth now claims that the issue is precluded by the law of the case doctrine, *supra,* because it was not raised during the first appeal. However, as we held in *Sherley v. Commonwealth,* Ky., 889 S.W.2d 794 (1994), the law of the case doctrine does not apply where controlling law changes in the interim, and the issue is not ripe until the change in controlling law occurs; otherwise, "[a]pplication of the law of the case doctrine would require every defendant and every prosecutor to immediately challenge every aspect of the law involved in the case or forever be denied relief." *Id.* at 798. Even though the second trial was tried under the regime of *Shannon, supra,* the trial judge did, in fact, anticipate *Elliott* by instructing the jury on self-protection as a defense to reckless homicide. His error was in failing to properly allocate the burden of proof with respect to that issue.

Accordingly, the opinion of the Court of Appeals is reversed and this case is remanded to the Clay Circuit Court for a new trial.

LAMBERT, C.J., GRAVES, JOHNSTONE, KELLER and STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the jury was not precluded from any consideration of self-defense. The jury received a separate instruction on self-protection. This is not the same situation as presented in *Elliott v. Commonwealth,* Ky., 976 S.W.2d 416 (1998). Consequently, there was no reversible error.

The instruction by the trial court regarding the "missing evidence" is very generally worded and vague. It does not constitute prejudicial error. There is no reference in the closing argument of the prosecutor as to the unavailability of the door of the vehicle. I would affirm the judgment of conviction.