Jerry **FARMER**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2008–CA–001339–MR.

Court of Appeals of Kentucky.

Sept. 4, 2009.

Discretionary Review Denied by
Supreme Court May 12, 2010.

Anna Whites, Frankfort, KY, for appellant.

Jack Conway, Attorney General, Perry T. Ryan, Assistant Attorney General, Frankfort, KY for appellee.

Before LAMBERT and TAYLOR, Judges; HENRY,[1] Senior Judge.

## OPINION

LAMBERT, Judge.

Appellant, Jerry Farmer, was convicted by a Perry County jury of second-degree trafficking in a controlled substance (hydrocodone). For this crime, Farmer was sentenced to one and one-half years' imprisonment. He now appeals to this Court, setting forth several errors which he claims entitle him to a new trial. Finding no reversible error, we affirm the jury's verdict.

The evidence admitted at trial indicated the following: In September 2006, the Hazard Post of the Kentucky State Police paid confidential informants to help them orchestrate illegal drug transactions. Harold Dean Robinson was one of these confidential informants. Robinson told state police that he knew people from whom he could obtain illegal drugs. Farmer was one of these people.

According to Robinson, on September 22, 2006, he called Farmer and asked if Farmer would sell him drugs. Farmer replied that he would sell Robinson five Lorcet[2] tablets for fifty dollars. Robinson then called Detective Russell Dishner to alert him to the pending sale. Detective Dishner told Robinson to meet him at a church on Highway 80. Once at the church, Dishner instructed Robinson to call Farmer. This telephone call was recorded and played for the jury. During the telephone conversation, Robinson is heard asking Farmer whether he still had the Lorcets and whether he saved all the pills for him. Farmer is heard replying that he did have the pills and that Robinson could come pick them up.

Detective Dishner then searched Robinson's vehicle while another detective searched Robinson's person. No illegal substances were found in either location. Detective Dishner next prepared a recording device and instructed Robinson to place the recorder in his pocket so that the transaction could be recorded. Robinson was given fifty dollars to complete the transaction.

When Robinson left to go to Farmer's residence, the detectives followed him. Detective Dishner observed Robinson enter Farmer's residence. According to Robinson, he walked into Farmer's house, paid Farmer the fifty dollars given to him by the detectives, and received five blue pills from Farmer. This transaction was recorded and played for the jury.

Upon returning to Farmer's residence after driving about a quarter mile down the road, the detectives saw Robinson exiting Farmer's house. The detectives then followed Robinson back to the church where Robinson gave the detectives the recording device and five blue pills. The

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Hydrocodone is marketed under the trade name "Lorcet."

detectives searched Robinson and his vehicle again but found no illegal substances. At that time, Robinson was paid one hundred dollars for making the drug buy.

The five blue pills recovered by the detectives were delivered to the Kentucky State Police Crime Laboratory in London, Kentucky. These pills were examined by Nancy Hibbitts, a forensic scientist specialist. According to Hibbitts, the pills tested conclusively for hydrocodone. During cross-examination, Hibbitts stated that she mistakenly listed receiving four pills in her report. However, she explained that this marking in her report was an error. In fact, five pills had been delivered to the laboratory.

On March 23, 2007, Farmer was indicted by a Perry County grand jury for second-degree trafficking in a controlled substance (hydrocodone). On May 5 and 6, 2007, Farmer was tried before a Perry County jury for this crime. Farmer testified in his own defense.

According to Farmer, he admitted being in possession of the five blue pills and transferring these pills to Robinson on the day in question. However, Farmer explained that he did not sell the pills. Rather, the pills belonged to Robinson, but Robinson had asked Farmer to hold them for a brief period of time which Farmer agreed to do since Robinson was a friend.

On the day in question, Robinson requested his pills to be returned, and Farmer complied with his friend's request. As for the fifty dollars, Farmer claimed that Robinson was merely paying him for a loan Farmer had made to Robinson at the time he agreed to hold the pills. Farmer explained that Robinson was a drug addict who came to Farmer "in severe withdrawal," asking for money to purchase an "O.C." Robinson told Farmer that he stole the pills from his mother and that he needed Farmer to hold them so that Robinson would not sell or use the contraband. According to Farmer, Robinson said that he would retrieve the pills when he returned to pay Farmer back for the money Robinson had borrowed.

Farmer's attorney argued at trial that Robinson had arranged this whole transaction solely to obtain cash payments from the Commonwealth. Evidence was admitted at trial that Robinson was paid $1,000 for various drug transactions over the previous few months.

After considering the evidence summarized above, the Perry County jury found Farmer guilty of second-degree trafficking in a controlled substance (hydrocodone). On June 18, 2008, the Perry Circuit Court entered a criminal judgment against Farmer and sentenced him to imprisonment for a total of one and one-half years. Farmer now appeals to this Court as a matter of right. Finding no reversible error, we affirm.

 In his first assignment of error, Farmer claims the trial court erred in failing to tender a jury instruction on the lesser included offense of second-degree possession of a controlled substance. "An instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury could have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Commonwealth v. Day*, 983 S.W.2d 505, 508 (Ky.1999).

In this case, there are no evidentiary grounds for a second-degree possession instruction since neither the Commonwealth's nor Farmer's theory of the case supported such an instruction. In fact, Farmer admitted both possession of the controlled substance and transfer of this substance to Robinson on the day in question.

Kentucky Revised Statutes (KRS) 218A.1413(1)(a), the applicable trafficking statute for hydrocodone, sets forth the crime as follows:

(1) A person is guilty of trafficking in a controlled substance in the second degree when:

(a) He knowingly and unlawfully traffics in a controlled substance classified in Schedules I and II which is not a narcotic drug; or specified in KRS 218A.1412; or a controlled substance classified in Schedule III; but not lysergic acid diethylamide, phencyclidine, or marijuana; or . . . .

KRS 218A.010(40) defines "traffic" as it applies to this case as follows: "to manufacture, distribute, dispense, sell, transfer . . . ." Thus, based on Farmer's own theory of the case, the jury could not have believed that Farmer merely possessed the controlled substance without trafficking in it in violation of KRS 218A.1413(1)(a).

Citing no authority, Farmer claims the transfer in this case should not constitute a "transfer" under KRS 218A.010(40) because he was merely doing a favor for his friend by holding the drugs and then transferring the drugs back to his friend upon request. However, there is no basis in our law for such a claim. "Transfer" is defined broadly by KRS 218A.010(41) as follows: "to dispose of a controlled substance to another person without consideration and not in furtherance of commercial distribution[.]" Farmer's transfer clearly falls within these parameters.

Moreover, in *Day, supra,* the Kentucky Supreme Court rejected a similar argument where the defendant claimed that he was not guilty of trafficking in a controlled substance because he merely transferred the drugs as an "intermediary" for a friend without any expectation of consideration or remuneration. 983 S.W.2d at 507–08, n. 1.

In affirming the denial of an instruction on the lesser included offense of possession, the Supreme Court explained, "[a]ny possession which may have occurred prior to the transfer may have been a separate uncharged offense, but was not a fact necessary to prove the charged offense." *Id.* at 509.

By claiming that he did not own the pills but rather he was merely holding them as an agent for the true owner, Farmer's defense attempted to negate both the possession and transfer elements of the trafficking offense. *See Pate v. Commonwealth,* 134 S.W.3d 593, 598 (Ky. 2004) (discussing the elements of possession). In other words, if Farmer never possessed the pills in the first place because he was merely an agent for Robinson, he could not have transferred something he did not possess. In light of this defense that Farmer never possessed the pills, an instruction on mere possession was not warranted even under Farmer's theory of the case. Accordingly, the trial court did not err in refusing to submit this instruction to the jury.

■ Farmer next argues the trial court submitted an erroneous second-degree trafficking instruction to the jury. We disagree. The instruction in question stated as follows:

You will find the Defendant guilty of Second–Degree Trafficking in a Controlled Substance under this instruction if and only if, you believe from the evidence beyond a reasonable doubt both of the following:

A. That in this county on or about September 22, 2006, and before the finding of the Indictment herein, the Defendant sold or transferred Hydrocodone to Harold Dean Robinson; AND

B. That the Defendant knew the substance being sold or transferred was Hydrocodone.

Making a misplaced citation to *Commonwealth v. Rodefer*, 189 S.W.3d 550 (Ky. 2006), Farmer contends the definition of "traffic" as it is set forth in KRS 218A.010(40) does not include the act of "transferring" controlled substances. Such a contention is supported by neither case law nor the plain language of the applicable statute.

In *Commonwealth v. Rodefer*, the Kentucky Supreme Court discussed the two-pronged definition of "traffic" as it is currently set forth in KRS 218A.010(40).[3] *Id.* at 552–53. Under the first prong, a person can "traffic" if he or she directly manufactures, distributes, dispenses, sells or *transfers* contraband. *Id.* (Emphasis added). Under the second prong, a person can also "traffic" if he merely possesses contraband, but only if that person does so with the intent to manufacture, distribute, dispense or sell the contraband. *Id.*

In addressing facts falling under the second prong definition of "traffic," the *Rodefer* Court held that since the term "transfer" was notably absent from this second prong definition, merely possessing contraband with the intent to transfer it was not sufficient to meet the definition of "traffic" under KRS 218A.010(40). *Id.* at 553. This case is clearly distinguishable from *Rodefer*, *supra*, since Farmer admitted to directly transferring the pills to Robinson. Accordingly, Farmer's conduct fell under the first prong definition of "traffic," not the second prong.

The instruction submitted to the jury in this case followed exactly the model instruction for Second–Degree Trafficking in a Controlled Substance set forth in Cooper's *Jury Instructions*, § 9.13B (5th ed.2006). Since the direct transfer of controlled substances is included with the meaning of "traffic" as it is set forth in KRS 218A.010(40), there was no error in the jury instructions submitted by the trial court.

■ Farmer next argues the trial court erred in failing to submit a "missing evidence" instruction to the jury regarding the discrepancy on the crime laboratory report as to the number of pills delivered to the laboratory. "[A]bsent some degree of 'bad faith,'" a missing evidence instruction is not necessary or warranted. *Estep v. Commonwealth*, 64 S.W.3d 805, 810 (Ky. 2002). Rather, "the purpose of a 'missing evidence' instruction is to cure any [d]ue [p]rocess violation attributable to the loss or destruction of *exculpatory* evidence by a less onerous remedy than dismissal or the suppression of relevant evidence." *Id.*

In this case, Farmer cites no evidence to suggest bad faith on the part of the government and no evidence to suggest that missing evidence was somehow exculpatory to him. In fact, the opposite inference is warranted in this case. Further, the evidence actually suggests that a pill was not misplaced or lost, but rather a simple recording error was made on the laboratory specialist's report. Accordingly, the trial court did not err in refusing to give a "missing evidence" instruction to the jury as such an instruction was not required in this case.

■ Citing no authority, Farmer next complains he is entitled to a new trial because the trial court failed to submit a definition of the word "knowingly" to accompany the jury instructions for second-

---

**3.** At the time *Commonwealth v. Rodefer* was issued, the applicable definition of "traffic" was set forth in KRS 218A.010(34). Subse- quently, this definition was moved to subsection (40) of the chapter. *See* 2007 Kentucky Laws Ch. 124 (SB 88).

degree trafficking in a controlled substance. One of the elements of second-degree trafficking submitted to the jury was that Farmer "knew" the substance being sold or transferred to Robinson was hydrocodone.

While Farmer's counsel did request a jury instruction defining the word "knowingly," he did not actually tender an instruction for the term. The trial court determined that since the term is not specifically defined in KRS Chapter 218A and the term is "fairly well understood by the average lay person[,]" an instruction was not necessary in this case. *McRay v. Commonwealth*, 675 S.W.2d 397, 401 (Ky. App.1984) (finding no error in trial court's failure to define the term "knowingly" in case where jury was instructed to determine whether the defendant knowingly cultivated marijuana).

Farmer argues that KRS 218A.015 does provide a definition for the term "knowingly" by specifically referencing the definitions set forth in KRS Chapter 501 (Kentucky Penal Code, General Principles of Liability). The term "knowingly" as it is set forth in KRS Chapter 501 is defined as follows: "[a] person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of that nature or that the circumstance exists." KRS 501.020(2). We are dubious that this broadly worded definition would have provided much guidance to the jury.

In any event, we agree with the previous opinion of this Court that in light of the fairly well understood meaning of the term "knowingly," any error in failing to instruct on its definition as it is set forth in KRS Chapter 501 is likely harmless error. That is especially true in this case since Farmer testified at trial that Robinson asked him to keep a packet of his mother's pills so that he (Robinson) wouldn't use them or sell them. Moreover, the jury heard a recorded telephone conversation, which Farmer admitted having, where Robinson asked Farmer whether he still had the "Lorcets," and Farmer replied that he did. Our review of the record convinces us that error, if any, in failing to instruct the jury on the definition of the term "knowingly" was harmless. Kentucky Rules of Criminal Procedure (RCr) 9.24.

◼ Again, Farmer cites no authority to support his next argument that the trial court erred when it sustained the Commonwealth's objection to the questioning of Robinson regarding previous criminal charges from 2005 which were presumed dismissed upon the successful completion of a pretrial diversion program. *See* KRS 533.258(1) ("If the defendant successfully completes the provisions of the pretrial diversion agreement, the charges against the defendant shall be listed as 'dismissed-diverted' and shall not constitute a criminal conviction.").

Presumably, Farmer believes that he should have been permitted to impeach Robinson as to these unknown offenses with which Robinson had been charged. However, the Kentucky Rules of Evidence (KRE) only permit witnesses to be impeached for specific instances of conduct not reflecting on the witness's truthfulness (which Farmer did not claim at the time he attempted to introduce the evidence) upon conviction of a crime meeting the parameters set forth in KRE 609 (impeachment by evidence of conviction of crime).

The trial court determined, upon review of Robinson's two court files, that Robinson had completed the diversion program and, thus, he had not been convicted of any felony which would subject him to impeachment pursuant to KRE 609(a). As Farmer has submitted no evidence or au-

thority contradicting the trial court's conclusion, we find no error in the trial court's sustaining of the Commonwealth's objection regarding the questioning of Robinson as to unknown past criminal charges which were diverted and did not result in conviction.

Without setting forth any evidence to support his conclusion, Farmer suggests in his brief to this Court that the trial court may have erred in its presumption that Robinson had completed the diversion program since the parties acknowledged during the bench conference that there was no evidence in Robinson's files that the charges were ever actually dismissed. Rather, the trial court only assumed as such since no action to revoke Robinson's diversion status or to enter a judgment against Robinson was ever taken. Even if this were true, we find any error by the trial court to be harmless upon consideration of the totality of the evidence. We note in particular the unflattering testimony of Detective Dishner, who acknowledged before the jury that most confidential informants are "drug addicts and users."

▮ Farmer also contends that the trial court erred in sustaining the Commonwealth's objection to a portion of his testimony. A trial court's determination as to the admissibility of evidence will not be set aside unless there is an abuse of discretion. *See Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

During his testimony, Farmer explained how he came into possession of the Lorcets. He stated that Robinson had stolen the pills from his mother, but then asked Farmer to hold the stolen pills for a brief period of time so that Robinson would neither sell them nor use them. He also explained that Robinson had borrowed fifty dollars from him earlier and that is why he took the fifty dollars from Robinson

when he transferred the pills to him. When asked why Robinson had borrowed fifty dollars from him, Farmer stated, "To get an O.C." Farmer's counsel then asked, "Did he [Robinson] say that to you?" Farmer replied, "Yes, he did." At this point, the Commonwealth objected on grounds of hearsay and the trial court sustained its objection.

Farmer disingenuously and incorrectly states in his brief that the trial court excluded testimony "about why [Farmer] had the lorcets...." The trial court did no such thing. In fact, the trial court was very generous in allowing Farmer to present a full and unrestricted defense. The trial court limited testimony on a very small portion of Farmer's defense—why Robinson borrowed fifty dollars from him.

While we believe admitting such testimony would not have been error since it helped to explain why Farmer took the fifty dollars from Robinson and to impeach Robinson's testimony, *see* KRE 607 (who may impeach); *Brewer v. Commonwealth*, 206 S.W.3d 343, 351–52 (Ky.2006) (statements are not hearsay when they are admitted for the purpose of explaining one's actions rather than for proving the truth of the matter asserted so long as the actions taken are at issue in the case), we are not convinced the trial court abused its discretion in excluding the testimony.

The action at issue here was why Farmer took the fifty dollars from Robinson at the time of the pill transfer, not why Robinson allegedly borrowed fifty dollars in the first place. Since Farmer was permitted to explain his alleged reason for taking fifty dollars from Robinson at the time of the transfer (Robinson had borrowed money, and Farmer believed that Robinson was simply paying him back), we do not believe the "verbal act" doctrine set forth in *Brewer, supra*, would have necessarily

applied to permit Farmer's testimony regarding the reason why Robinson allegedly borrowed this money. *Id.* We therefore find no abuse of discretion on the part of the trial court in excluding this portion of Farmer's testimony since elaborating on why Robinson borrowed the fifty dollars was not necessary and possibly prejudicial to the Commonwealth.

 In any event, upon review of the totality of the evidence, we are convinced that any conceivable error made by the trial court in excluding this testimony did not affect Farmer's substantial rights. Kentucky Rules of Criminal Procedure (RCr) 9.24. Admitting further testimony as to why Robinson borrowed money from Farmer would not have altered the outcome of this case. The jury was permitted to hear Farmer's explanation as to Robinson's alleged drug problem, his alleged attempt to help Robinson as a friend by holding the pills for him and allowing him to borrow money, and his alleged reason for taking the fifty dollars from Robinson when he allegedly gave the pills back to Robinson. The fact that Farmer was not permitted to elaborate as to Robinson's need for an "O.C." was not significant and does not rise to the level of reversible error.

■ In his final assignment of error, Farmer argues the trial court erred in overruling his motions for directed verdicts of acquittal. "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991).

As previously explained, Farmer's admitted actions were enough, as a matter of law, to allow the jury to find guilt under KRS 218A.1413(1)(a). Even without Farmer's testimony, the Commonwealth's evidence was more than sufficient for a finding of guilt under KRS 218A.1413(1)(a). Accordingly, there was sufficient evidence at both the close of the Commonwealth's case and at the close of trial to withstand Farmer's motions for a directed verdict of acquittal.

After carefully considering Farmer's arguments and finding no reversible error, we hereby affirm Farmer's conviction and sentence recorded by final judgment entered by the Perry Circuit Court on June 18, 2008.

ALL CONCUR.