RENDERED: MAY 1, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-1267-MR

KELLY GILBERT        APPELLANT

APPEAL FROM MCCRACKEN CIRCUIT COURT
v.        HONORABLE W.A. KITCHEN, JUDGE
CASE NO. 21-CR-00078

COMMONWEALTH OF
KENTUCKY        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: A. JONES, KAREM, AND MOYNAHAN, JUDGES.

KAREM, JUDGE: Kelly Gilbert appeals from a McCracken Circuit Court judgment after a jury convicted her of second-degree assault. The charge stemmed from a traffic accident in which Gilbert collided with another vehicle head-on, seriously injuring the driver. Gilbert argues that the trial court erred in (1) denying her motion to suppress evidence recovered in a warrantless search of her truck and

purse, and (2) failing to give a missing evidence instruction for the investigating police officer's bodycam video. Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The accident occurred on a bridge on Old Benton Road, a two-lane roadway leading to Paducah. At trial, two witnesses testified they saw Gilbert driving her truck erratically and at high speed immediately before the accident. On the afternoon of September 12, 2020, at around 2:30, Corey Carmen observed Gilbert trying to turn left onto Old Benton Road. Gilbert hit the curb and had to back up four or five times before eventually making the turn. Carmen turned in behind her. He testified that she took off really fast and was swerving over the center line. When he slowed down for a school zone, he lost sight of her. When he saw her next, she had collided with a small gold sedan. Gilbert had gotten out of her truck and was stumbling around towards an ambulance. He thought this was because she had just had a really hard impact.

Stacy Thuline testified that she was pulling out of her driveway onto Old Benton Road when she saw Gilbert's truck approaching well down the road. Thuline pulled out in front of Gilbert and headed towards Paducah. After passing three or four houses, Thuline noticed that Gilbert was right behind her. Thuline sped up to put some distance between them. Gilbert kept crossing the center line, as if she was going to pass, but Thuline did not think Gilbert would make it if a car

-2-

was coming in the opposite direction. The next thing Thuline saw was the tail end of Gilbert's vehicle in the air after she collided with the sedan.

John Castens, the driver of the gold sedan, was driving on Old Benton Road away from Paducah, to make a DoorDash delivery. At Clarks River, he suddenly saw white. At that time, he was in his lane. When he woke up, he was pinned in his car. Ultimately, the Jaws of Life were used to remove Castens from his car, and he was life-flighted by helicopter to Vanderbilt University Hospital.

McCracken County Deputy Sheriff Jason Walters was the first police officer at the scene. He observed that Gilbert had collided with Castens. He also observed that all the gouge marks from the collision were in the outbound lane from Paducah. He saw that Castens was trapped in his car and contacted dispatch to tell them to have the fire department and EMS hurry up. He checked on Gilbert and asked her if she was okay. He testified that he didn't know if she was in shock from the wreck or what, but she wasn't answering any of his questions.

When Deputy, now Detective, Blake Maness arrived at the scene, EMS was tending to Castens, so he went to check on Gilbert. She had gotten out of her truck. He described her as lethargic, and her speech as very thick and slurred. He did not smell alcohol, so he did not conduct a breathalyzer test, but he suspected that she was under the influence of a controlled substance. She was taken to an ambulance. Maness searched her truck and found an empty Suboxone

pill bottle in her purse. The prescription had been written for her, on September 2, 2020, twelve days prior to the accident. He did not collect the bottle.

Maness went to the ambulance where Gilbert was sitting and attempted to perform an HGN (Horizontal Gaze Nystagmus) test. He testified that the test is supposed to be administered while the subject is standing, but that he felt that at that point, any evidence he could gather would be more beneficial than just leaving it alone. He was able to perform two parts of the test before Gilbert was transferred to another ambulance to be transported for medical treatment. Maness testified that Gilbert showed lack of smooth pursuit and maximum deviation, which indicated that she was under the influence. He went to the hospital to speak with her and gave her a citation instead of arresting her. He did not request a blood draw.

Maness testified that the police were equipped with body cameras at the time, but he did not have any idea whether there was any video of him or any other officer at the accident and he did not check to see if anything was uploaded.

Gilbert was indicted on one charge of operating a motor vehicle under the influence of alcohol/drugs, and one charge of first-degree assault. She initially entered a plea of guilty to the charges but thereafter retained new counsel and successfully moved the trial court to withdraw her plea.

Gilbert sought to suppress the evidence recovered from the search of her vehicle. The trial court conducted a suppression hearing and found that the search was justified under the automobile exception to the warrant requirement. It entered findings of fact, conclusions of law, and an order denying the motion to suppress on April 27, 2023. Gilbert thereafter appeared in court to enter another guilty plea, which the trial court ultimately decided not to accept.

Prior to trial, Gilbert tendered jury instructions, including a general missing evidence instruction. At trial, she moved for a missing evidence instruction for Deputy Maness's body camera video. The trial court denied the motion because of lack of proof that the Commonwealth intentionally destroyed the video.

The jury convicted Gilbert of second-degree assault. In accordance with the recommendation of the jury, the trial court imposed a sentence of ten years. This appeal followed. Further facts will be set forth below as necessary.

## STANDARD OF REVIEW

Gilbert's two allegations of error are reviewed under differing standards.

The denial of the pretrial motion to suppress is reviewed under the following two-part standard:

> First, we review the trial court's findings of fact under a clearly erroneous standard. Under this standard, the trial

> court's findings of fact will be conclusive if they are supported by substantial evidence. We then conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law.

*Whitlow v. Commonwealth*, 575 S.W.3d 663, 668 (Ky. 2019) (citation omitted).

The trial court's refusal to give a missing evidence instruction to the jury is reviewed for an abuse of discretion. *Downs v. Commonwealth*, 620 S.W.3d 604, 613 (Ky. 2020). A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id*. (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

## **ANALYSIS**

**i) The trial court did not err in denying the motion to suppress because the warrantless search of the vehicle and purse was supported by probable cause**

At the pretrial suppression hearing, Deputy Maness was the sole witness. He testified that he responded to the scene of a collision on Old Benton Road to investigate a suspected DUI. A witness who was driving behind Gilbert told him that she had been traveling at a high rate of speed and swerving all over the road. Another witness told him that she had just pulled out of her driveway onto Old Benton Road when Gilbert drove up behind her and got very close, acting like she was going to pass. The witness said she was looking in her rearview mirror and saw that Gilbert was again acting like she was going to pass and that is when Gilbert struck the other vehicle head on.

-6-

Maness testified that when he talked with Gilbert, she was lethargic, and her speech was thick and slurred. He did not smell any alcohol on her but based on the statements of the witnesses and his own observation, he believed her to be under the influence of an intoxicant, possibly a depressant. He did not observe any head injury. She was taken to an ambulance, and he asked her if she had any head injury and she responded, "No." Had she not been taken to the hospital for treatment, Maness believed he would have had probable cause to arrest her for DUI.

Maness began to administer the HGN test while Gilbert was in the ambulance. She showed lack of smooth pursuit and maximum deviation, but he was unable to complete the test because the EMTs informed him they needed to put her in another ambulance for transport to the hospital.

Maness searched Gilbert's vehicle. He believed she was still in the ambulance when he did so, but he did not ask her consent. He testified that he was looking for any kind of controlled substance which she might have been under the influence of at that time.

Maness found an empty prescription bottle for forty-two Suboxone tablets that was filled on September 2, 2020. He found the bottle in her purse on the passenger side of the vehicle. He testified, based on his training and experience, that Suboxone is a controlled substance that is taken by individuals to

curb their craving for opiates. He stated that if a user takes an excessive amount, the user has the tendency to show signs similar to opiate use. He did not collect the bottle.

On cross-examination, he testified that while she was in the ambulance, Gilbert was about fifty to seventy-five yards away from the truck.

Maness described the search of the vehicle as incident to arrest, as he would have placed Gilbert under arrest if she had not been in the ambulance going to the hospital. Her vehicle was towed after she was taken away. Maness testified that he would have lost the opportunity to preserve whatever evidence there would have been in the vehicle as someone else could have accessed it.

He testified that the investigating police officers had body cameras on, but there was no video available and nothing was preserved.

The trial court denied the motion to suppress, based on the following findings:

> On September 14, 2020, McCracken County Sheriff's Department Deputy Blake Maness responded to the scene of a collision on Benton Rd. The collision involved two vehicles. The defendant was the operator of one vehicle, a small truck. The operator of the second vehicle sustained serious injuries. Based upon the scene, it is believed that the defendant's vehicle hit the second vehicle head-on in the other lane of traffic.
>
> Maness spoke to a witness who said he was following the defendant's vehicle. The witness said that the

-8-

defendant's vehicle was traveling at a high rate of speed and swerving all over the highway.

Maness spoke to another witness at the scene who said she pulled out of her driveway and that the defendant's vehicle was traveling at a high rate of speed and attempting to pass her in a non-passing zone.

The defendant was on the scene when Maness arrived. She was lethargic and her speech was slurred. Based upon his observations and the witness statements, Maness believed her to be under the influence of an intoxicating substance. Based on his training and experience, he believed her to be under the influence of a depressant.

Maness searched the defendant's vehicle. He was looking for evidence of any intoxicating substance. He located a prescription bottle for Suboxone inside of a purse inside the vehicle. The prescription was filled on September 2, 2020, for forty-two tablets but was empty on the date of the collision. Suboxone is a controlled substance prescribed to treat opioid addiction. If taken to excess it can lead to intoxication.

The defendant was taken from the scene by ambulance to the hospital. She was not arrested at the scene but was rather cited to court for assault and driving under the influence.

The trial court concluded that the search of Gilbert's truck was

justified under the automobile exception to the warrant requirement:

[A]n officer may search a legitimately stopped automobile where probable cause exists that contraband or evidence of a crime is in the vehicle. The search may be as thorough as a magistrate could authorize via a search warrant, including all compartments of the automobile and all containers in the automobile which

-9-

might contain the object of the search.

*Gray v. Commonwealth*, 28 S.W.3d 316, 319 (Ky. App. 2000) (citations omitted).

The trial court applied *Gray* to the facts of the case as follows:

Deputy Maness observed evidence of a head-on collision caused by the defendant attempting to pass in a non-passing zone.  He spoke to two witnesses at the scene who described aggressive and poor driving on the part of the defendant.  Moreover, he personally observed the defendant following the collision, and observed signs of impairment including slurred speech and lethargy.  Based upon the foregoing, Deputy Maness had probable cause to believe that the defendant was driving under the influence of an intoxicant.

While the vehicle was damaged and likely inoperable, Deputy Maness knew that the vehicle would soon be towed to another location and an opportunity to gather evidence from the vehicle could be lost.

On appeal, Gilbert argues that no exception to the warrant requirement exists to support the warrantless seizure and search of her truck and purse.

"The bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks v. Delaware*, 438 U.S. 154, 164, 98 S. Ct. 2674, 2681, 57 L. Ed. 2d 667 (1978).

Gilbert argues that a government agent can conduct a warrantless search of an area in which a person has a reasonable expectation of privacy only when the agent has both probable cause and there are exigent circumstances. So, for example, "[a]bsent probable cause **and** exigent circumstances, law enforcement officers may not enter an individual's private residence in order to conduct a warrantless search." *Southers v. Commonwealth*, 210 S.W.3d 173, 176 (Ky. App. 2006), *overruled on other grounds by Brumley v. Commonwealth*, 413 S.W.3d 280 (Ky. 2013) (emphasis supplied). Gilbert contends that the search of her truck and purse was not supported by probable cause and the trial court never identified any exigent circumstances.

But the automobile exception to the warrant requirement, which was the exception relied upon by the trial court, does not require a finding of exigent circumstances to justify a warrantless search:

> The automobile exception to the warrant requirement applies when the vehicle is readily mobile and probable cause exists to believe evidence of criminal activity may be contained in the vehicle. A vehicle is considered readily mobile even if it has been secured by law enforcement or there is little to no risk a suspect or his accomplices could access the vehicle. An independent finding of exigent circumstances is not required under the automobile exception because the exception is based upon "reduced expectations of privacy" in vehicles.

*Gasaway v. Commonwealth*, 671 S.W.3d 298, 316–17 (Ky. 2023) (citations omitted).

The automobile exception also extends to containers, such as Gilbert's purse, in the vehicle: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 2173, 72 L. Ed. 2d 572 (1982).

Gilbert argues that there was no showing of probable cause that evidence of a crime was in her purse and that Maness had at most only a "bare suspicion" of a crime. "The test for probable cause is whether, under the totality of the circumstances, a fair probability exists that contraband or evidence of a crime will be found in a particular place." *Beckam v. Commonwealth*, 284 S.W.3d 547, 549 (Ky. App. 2009).

Gilbert contends that bad driving and speeding do not provide probable cause that there was evidence of a crime in her purse. She also casts doubt on the trial testimony of the witnesses Carmen and Thuline that she was speeding and driving erratically immediately before the accident. She has included maps of the area around the accident site and placed pins at various locations on the maps to show the distances traveled by the witnesses. She argues, based on her calculations, that it was impossible for Corey Carmen to observe her speeding unless he was speeding himself. She contends that Stacy Thuline was most likely driving erratically when she pulled out of her driveway and that Thuline probably

-12-

caused Gilbert to lose control of her vehicle. But the testimony of these two witnesses was presented at trial, not at the suppression hearing, and none of these arguments regarding the veracity of their testimony was presented to the trial court as grounds for suppression. "Our review of the facts is generally limited to the evidence presented at the suppression hearing." *Gasaway*, 671 S.W.3d at 316. The only testimony at the suppression hearing came from Deputy Maness, who testified generally regarding what the two witnesses had told him. The jury was free to assess the credibility of these witnesses at trial and Gilbert was free to impeach their testimony on cross-examination. Her appellate arguments are essentially an attempt to re-try the suppression hearing, using the testimonial evidence that was offered years later at trial.

In any event, probable cause must be evaluated in light of what Maness knew at the time he made the decision to conduct the warrantless search. Obviously, Maness would not have had the time or the opportunity to measure the distances and perform the mathematical calculations found in Gilbert's brief in order to test the accuracy of the Carmen and Thuline's statements. As the trial court found, Maness had substantial additional evidence to support a finding of probable cause: Gilbert's vehicle had crossed over into Casten's lane for no apparent reason and struck his vehicle head-on, and, based on Maness's own observations, Gilbert appeared to be under the influence of some kind of intoxicant

or depressant.  Maness was also apprehensive that any evidence relating to her impairment that could be found in Gilbert's truck would be lost or destroyed when the vehicle was towed away.  The trial court's findings in this regard are supported by substantial evidence and its application of the automobile exception was correct as a matter of law.

**ii) The trial court did not abuse its discretion in denying the motion for a missing evidence instruction because it applied the correct legal standard**

Next, Gilbert argues that she was entitled to a missing evidence instruction for Maness's bodycam video.  Maness testified that he was wearing a bodycam when he investigated the accident, but he was not sure if it was on or not and he did not know whether it recorded.  He said that, to his best recollection, he would have had it on.  The trial court refused to give the missing evidence instruction because there was no evidence that the video was deliberately destroyed.

> A missing-evidence instruction is one way to cure an alleged violation of due process per *Brady v. Maryland*, [373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)] other than dismissal of the charge altogether or exclusion of the Commonwealth's evidence outright, the latter two being the more drastic remedies.  Entitlement to the instruction arises when purportedly exculpatory evidence was destroyed by the Commonwealth intentionally or inadvertently "outside of normal practices," or when such evidence was so significant and forever lost that it compromises the defendant's due-process right to a fair trial.  This standard, perhaps with minor modification, reflects the due-process standard

established in *Arizona v. Youngblood*, [488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988)] which held the Due Process Clause was not implicated by "the failure of the State to preserve evidentiary material of which no more can be said then that it could have been subjected to tests, the results of which might have exonerated the defendant."

*Dooley v. Commonwealth*, 626 S.W.3d 487, 502–03 (Ky. 2021) (citations omitted).

In order to receive a missing evidence instruction, the criminal defendant must demonstrate that the Due Process Clause was implicated, which occurs "only when the failure to preserve or collect the missing evidence was intentional and the potentially exculpatory nature of the evidence was apparent at the time it was lost or destroyed." *Estep v. Commonwealth*, 64 S.W.3d 805, 810 (Ky. 2002). "[A]bsent some degree of 'bad faith,' the defendant is not entitled to an instruction that the jury may draw an adverse inference from that failure." *Id*.

Gilbert does not dispute that the trial court correctly followed our current precedent regarding missing evidence instructions but argues that the bad faith standard for criminal defendants as it currently stands foreclosed her opportunity for a fair trial. Specifically, she challenges what she describes as the inequity stemming from the fact that criminal defendants must meet a higher burden than civil litigants in seeking a missing evidence instruction. "To prove entitlement to a missing evidence instruction in civil litigation, a litigant only [has] to show that the opposing party had exclusive control over the evidence when it

-15-

went missing and that the evidence is missing without explanation." *Sanchez v. Commonwealth*, 680 S.W.3d 911, 929 (Ky. 2023) (internal quotation marks and citations omitted). The Kentucky Supreme Court has expressed misgivings about the disparity between the civil and criminal standards, stating:

> The Court recognizes it may soon be appropriate to reflect on the burden of proof criminal defendants sometimes bear under *Youngblood* and acknowledges that some authorities are critical of the current standard. The burden of proving bad faith is quite difficult to carry, and our historical imposition of a higher burden on criminal defendants than civil litigants is more than curious.

*Dooley*, 626 S.W.3d at 503.

In *Sanchez*, the Court stated that it stood by its statement in *Dooley* and reiterated that it might soon have to address the disparate burdens placed on criminal and civil litigants, but concluded that *Sanchez* was not the case to do it. *Sanchez*, 680 S.W.3d at 929. The Court has not revisited the issue in its published opinions.

The Court of Appeals "is bound by and shall follow applicable precedents established in the opinions of the Supreme Court and its predecessor court. SCR [Rules of the Kentucky Supreme Court] 1.030(8)(a). We are without authority to overrule the established precedent set by the Supreme Court or its predecessor Court." *Commonwealth v. Frazier*, 722 S.W.3d 541, 569 (Ky. App. 2025) (internal quotation marks and citation omitted).

-16-

The trial court's decision not to allow the missing evidence instruction was not an abuse of discretion because it was fully in accordance with our case law. Gilbert did not demonstrate that the Commonwealth intentionally destroyed any bodycam video; indeed, it is unclear from Maness's testimony if bodycam video existed at all.

## CONCLUSION

For the foregoing reasons, the final judgment of the McCracken Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Roy Alyette Durham, II
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky